[Civ. No. 20546. Second Dist., Div. One. Jan. 17, 1955.]

Estate of J. F. T. O'CONNOR, Deceased. MINNIE L. TREPANIER et al., Appellants, v. UNIVERSITY OF NORTH DAKOTA et al., Respondents.

Sander L. Johnson and Ronald N. Davies for Appellants.

Herbert G. Nilles, Harold D. Shaft and Shaft, Benson & Shaft for Respondents.

WHITE, P. J.—This is an appeal from the decree determining heirship, which provides that "income accumulated during the period of five years after the date of the decedent's death be added to the corpus" and distributed to respondents, a university and several religious corporations, after the death of the last of appellants, the sister and brother of testator, who are to be paid "the income from the augmented corpus."

The matter was heard by the superior court upon the petition for determination of heirship filed by Bank of America National Trust and Savings Association, as executor of the last will and testament of said decedent, and the answer thereto filed by appellants as persons interested in said estate. No evidence was given or offered, and the only question involved is the interpretation of the testamentary writings of decedent.

Testator had never married. He was an experienced and successful businessman, lawyer and federal judge, and a former Comptroller of the Currency of the United States. He died September 28, 1949, leaving a will dated October 17, 1937, and two codicils dated May 10, 1946, all of which were entirely written, dated and signed in his own handwriting.

By decedent's holographic will and codicils, after directing payment of his funeral expenses, debts and obligations, and making specific bequests, including $5,000 each to respondents and appellants, he provided in Paragraph Nineteenth as follows:

"Nineteenth I direct that the residue of my estate shall be kept intact for a period of five years after my death the income during the sixth year and each year thereafter shall be paid to my sister, Minnie L. Trepanier, my brothers Thomas J. O'Connor, L. E. O'Connor, Charles A. O'Connor and my cousin Annie Enright share and share alike, during the lifetime of each. At death of any one his or her interest shall pass to the survivors named in this paragraph. Upon the decease of the last remaining beneficiary named in this paragraph, the remainder of my estate both real and personal shall be divided equally share and share alike among the University of North Dakota, St. James, St. Michaels and St. Mary's Schools provided that each institution shall raise a sum of money equal to the share under this paragraph provided which total sum shall be held by each institution in trust the income to be used for scholarship awards. The failure of one or more of the institutions named to comply with this provision within one year after such institution is

entitled to the benefits named then such share shall pass to the institutions complying with these terms. If no institution is found entitled to the benefits of this section the residue of my estate shall be distributed to St. Michael's Hospital at Grand Forks, No Dak.''

The names of Thomas J. O'Connor and Annie Enright were stricken from said Paragraph Nineteenth by the provisions of one of the codicils. Charles A. O'Connor, one of the beneficiaries of the income mentioned in Paragraph Nineteenth, died on October 11, 1952.

Briefs on appeal have been filed by Minnie L. Trepanier and L. E. O'Connor, testator's sister and brother, hereafter referred to as ''Appellants,'' by respondent University of North Dakota, hereafter referred to as ''Respondent University,'' and by respondents St. Mary's Catholic Church, St. Michael's Catholic Church, and Academy of St. James, hereafter referred to as ''Respondent Religious Institutions.''

Appellants suggest that punctuation be added to make the first sentence of said Paragraph Nineteenth read thus:

''I direct that the residue of my estate be kept intact for a period of five years after my death. The income, during the sixth year and each year thereafter. shall be paid to . . . my sister Minnie L. Trepanier . . . and brother(s) . . . L. E. O'Connor . . . share and share alike during the lifetime of each.'' (The period, capital, and two commas underlined have been added.) Respondents concede that if said portion of Paragraph Nineteenth were so punctuated, the phrase ''during the sixth year and each year thereafter'' would be an adverbial phrase designating the times for payments of the income to be made to appellants. However, respondents insist that the plain words of said Paragraph Nineteenth ''without the addition of punctuation, show a clear and consistent plan of testamentary disposition and show beyond question that it was the intention of the testator that the income for the first five years after his death should be accumulated and added to the principal . . .'' and distributed to respondents after the death of the last of appellants; and respondents argue that ''the addition of this punctuation does violence to the expressed intention of the testator.''

In the first 18 paragraphs of said will, some sentences have been commenced with small letters and some have not been closed by periods, although there is no doubt that such sentences are complete and are not a part of preceding or

succeeding sentences or phrases. While respondent university urges that "There is no legal authority . . . which would support a repunctuation of the will in question . . . ," and the copy of said Paragraph Nineteenth appended to its brief discloses no punctuation in the portion which gives rise to this controversy, in the remainder of the so-called copy of said Paragraph Nineteenth we find one period and seven commas which do not appear in the photostatic copy of the holographic will in the clerk's transcript.

Under the circumstances of this proceeding, the construction of the will is a question of law, and its purpose is to ascertain, if possible, the testator's intent as expressed by his own language used in his will. (*Estate of Ottoveggio,* 64 Cal.App.2d 388, 391 [148 P.2d 878].) It is therefore the duty of this court to interpret the will independently and without presumption as to the correctness or error of the decree determining heirship, from which this appeal was taken. (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; *Estate of Norris,* 78 Cal.App.2d 152, 159 [177 P.2d 299]; *Estate of Sahlender,* 89 Cal.App.2d 329, 347 [201 P.2d 69].)

As a lawyer and judge, testator must be presumed to have known and intended the usual meanings of the words used by him. (*Estate of Welsh,* 89 Cal.App.2d 43, 50 [200 P.2d 139]; *Estate of Rutan,* 119 Cal.App.2d 592, 598 [260 P.2d 111].)

First, we will consider what was intended by testator when he used the word "residue." Appellants contend that by "residue" testator refers to the balance of the corpus of the estate (as of the date of death) remaining after payment therefrom of the funeral expenses, debts, expenses of administration, and specific bequests in accordance with paragraphs First to Eighteenth of the will. Respondents urge that testator intended all such debts, expenses of administration and specific bequests to be paid out of the first five years' income, and the remainder, if any, of said five years' income to become a part of the residue to be distributed to respondents, and the income for the sixth and subsequent years only to be distributed to appellants.

Words occurring more than once in a will are presumed to be used in the same sense. In the will now being construed the word "residue" appears only twice, and about midway between the two uses of the word "residue," testator has used the word "remainder" to designate the same portion of his estate, all in said Paragraph Nineteenth, as follows: "I

direct that the *residue* of my estate be kept intact for a period of five years after my death . . . Upon the death of the last remaining beneficiary named in this paragraph (appellants), the *remainder* of my estate . . . shall be divided equally between" respondents, upon certain conditions, or "the *residue* . . . shall be distributed" to the hospital. (Emphasis added.)

Webster's International Unabridged Dictionary defines "remainder" as "the portion of a thing remaining, or left, after the separation and removal of a part; residue; remnant." "Residue" is there defined as "the part of a testator's estate . . . remaining after the satisfaction of all debts and previous devises and bequests."

We are persuaded that testator, by the words "residue" and "remainder" in said Paragraph Nineteenth, meant the portion of the corpus of his estate which should remain after payment of funeral expenses and "all debts and obligations" in accordance with Paragraph First, and payment of all specific legacies expressed in Paragraphs Second to Eighteenth, inclusive. Testator directed that "the residue . . . shall be kept intact for a period of five years after my death. . . ." Had he meant "the entire corpus" he would have said so. He was not a layman who did not know the difference between the terms.

The next difference in construction to be considered is the meaning of the words "shall be kept intact for five years . . .." Respondents contend that these words, when considered with the whole of Paragraph Nineteenth, are tantamount to a direction that five years' income shall be added to and become a part of the "residue" to be distributed to respondents. Such construction completely ignores the meaning of the words "shall be kept intact." Again, we look to the dictionary. "Intact," literally and in every day usage, means "not touched" or "untouched." "Touched," the adjective, describes that which "has been subjected to touching, especially to handling, meddling, improving. . . ." A residue which is "kept intact" cannot be subtracted from, nor can it be added to. We conclude that it was testator's intention, when he directed that the "residue . . . shall be kept intact for five years . . . ," that it remain the same as it was after effect had been given to Paragraphs First to Eighteenth of his will.

Testator's words, "I direct that the residue of my estate shall be kept intact for a period of five years after my death"

form a complete sentence. His next following expression, "The income, during the sixth and each year thereafter, shall be paid to my sister, Minnie L. Trepanier, my brother . . . L. E. O'Connor . . . , share and share alike, during the lifetime of each," is likewise a complete sentence. We are impressed that testator so intended them.

■ From the fact that testator provided that some of the specific bequests in Paragraphs First to Eighteenth should be paid in six months, one year, two years, or five years, respondent university argues that "Testator showed a consistent regard for the time element in his bequests" and had set the times for payment in order that such bequests could be paid from income without disturbing the corpus of the estate. However, it appears to us that testator's providing such varying times for payment makes it even more logical that he intended the phrase "during the sixth year and each year thereafter" to express the times for payment of the income from the residue to his relatives, the appellants.

Appellants' argument that testator intended the first five years' income to be distributed to them during the sixth year, and each year's income to be so distributed annually thereafter, is more convincing than is the position of respondents that the first five years' income was intended to be added to and become a part of the "residue" to be distributed to respondents.

We have considered Paragraph Nineteenth alone and in conjunction with and as a part of the entire will and the two codicils, and we find no expressed or implied provision for adding the first five years' income to the residue and distributing it to the respondents. On the contrary, it seems clear that testator intended "the income," not a part only, to be distributed to his brother and sister, the appellants.

■ If, however, the testamentary writings of decedent had left this question in doubt, and it could not be determined from the will, then "the interpretation by which the property goes to those of the blood of the testator is preferred" over the construction under which it would go to strangers. (*Estate of Boyd,* 24 Cal.App.2d 287, 289-290 [74 P.2d 1049]; *Estate of Hartson,* 218 Cal. 536, 540 [24 P.2d 171].)

Because of the conclusions hereinabove expressed, it becomes unnecessary for us to consider the other questions discussed in the briefs.

The order is reversed and the cause remanded with direc-

tions to the court below to enter its decree determining heirship in accordance with the views expressed herein.

Doran, J., and Drapeau, J., concurred.

Respondents' petitions for a hearing by the Supreme Court were denied March 16, 1955. Schauer, J., was of the opinion that the petitions should be granted.