[Civ. No. 22484. Second Dist., Div. Two. Mar. 5, 1958.]

Estate of J. F. T. O'CONNOR, Deceased. MINNIE L. TREP-ANIER et al., Appellants, v. UNIVERSITY OF NORTH DAKOTA et al., Respondents.

Sander L. Johnson, Henry P. Lopez and W. Burton Leach for Appellants.

Brady, Nossaman & Walker, Walter L. Nossaman, Joseph L. Wyatt, Jr., Harold D. Shaft, Richard E. Kyle and Herbert G. Niles for Respondents.

KINCAID, J. pro tem.*—This is an appeal on the judgment roll from the order made on a petition to determine heirship filed in the Estate of J. F. T. O'Connor, deceased. The court found that decedent had no descendant and left no ancestor surviving him and determined and enumerated his only heirs, three of whom, Minnie L. Trepanier, L. E. O'Connor and John J. O'Connor, are the petitioners herein.

The court found: "8. Decedent died on September 28, 1949. He left a holographic will dated October 17, 1937, which bequeathed the residue of his estate as follows: 'Nineteenth: I direct that the residue of my estate shall be kept intact for a period of five years after my death and the income during the sixth year and each year thereafter shall be paid to my sister, Minnie L. Trepanier, my brothers, Thomas J. O'Connor, L. E. O'Connor, Charles A. O'Connor and my cousin Annie Enright, share and share alike, during the life time of each. At death of any one his or her interest shall pass to the survivors named in this paragraph. Upon the decease of the last remaining beneficiary named in this paragraph, the remainder of my estate both real and personal shall be divided equally, share and share alike, among the University of North Dakota, St. James, St. Michaels and St. Mary's schools, provided that each institution shall raise a sum of money equal to the share under this paragraph provided which total sum shall be held by each institution in trust the income to be used for scholarship awards. The failure of one or more of the institutions named to comply with this provision within one year after such institution is entitled [sic] to the benefits named, then such share shall pass to the institutions complying with these terms. If no institution is found entitled to the benefits of this section, the residue of my estate shall be distributed to

*Assigned by Chairman of Judicial Council.

St. Michaels Hospital at Grand Forks, No. Dak.' A holographic codicil dated May 10, 1946, provided as follows regarding the residue: '(19) The name of Thomas J. O'Connor my brother, shall be stricken from paragraph (19). and the name of Annie Enright shall be stricken from the same paragraph 19. . . .' Both of these documents were duly admitted to probate in this Court.

"9. (a) On November 23, 1953, Bank of America National Trust and Savings Association as executor of the will of J. F. T. O'Connor, deceased, filed in this Court and cause its Petition for Determination of Heirship, reciting, among other things, the provisions of Article Nineteenth of decedent's will and the provisions of the codicil amendatory thereof, and praying: 'WHEREFORE, your petitioner prays that the Court determine who is entitled to income accumulated during the said five-year period and to the distribution of the said Estate.' (b) On the same day, namely, November 23, 1953, Bank of America National Trust and Savings Association as such executor filed an instrument entitled Petition to Appoint Trustee, which, among other things, recited the provisions of Paragraph Nineteenth quoted above, and prayed: 'WHEREFORE, your petitioner prays that it be appointed Trustee to receive the Estate from the Executor when the said Estate is ready to be closed, and thereafter to hold the Estate as Trustee for the testamentary purposes specified in the decedent's Will.' (c) On May 28, 1954, the above named Court made a decree entitled 'Decree Determining Heirship,' which was reversed upon appeal by the life beneficiaries, Minnie L. Trepanier and L. E. O'Connor, by the District Court of Appeal in *Estate of O'Connor*, 130 Cal.App.2d 258 [278 P.2d 748], hearing denied by the Supreme Court of California March 16, 1955. Pursuant to such reversal a new decree was entered by the above named Court on April 1, 1955, providing in part as follows: '2. That the said beneficiaries, L. E. O'Connor and Minnie L. Trepanier, are entitled to the net income accrued during the period from the date of death of the testator to September 28, 1954; that the said net income shall be distributed by the Executor to the testamentary trustee and by it distributed to said beneficiaries, share and share alike. 3. That the income accruing from and after September 29, 1954 be distributed to said beneficiaries, L. E. O'Connor and Minnie L. Trepanier, share and share alike, in accordance with the terms of the decedent's Will and Codicil.' (d) On May 28, 1954, the above named Court made an order entitled Order

Appointing Trustee, which, after reciting appearance of the various parties, the giving of due notice, and the fact that objections previously filed by certain beneficiaries were withdrawn, continues: 'It further appears, and the Court finds, . . . that the provisions of the Will are effective to create a trust, so that the appointment of a Trustee is necessary to receive the estate from the Executor when the estate is closed and to hold the same for the testamentary purposes specified in the decedent's Will; and IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Bank of America National Trust and Savings Association be appointed Trustee to receive the estate from the Executor when the estate is ready to be closed and thereafter to hold the corpus of the estate for the testamentary purposes specified and in accordance with the provisions of the decedent's Will and Codicil.' No appeal was taken by anyone from the order of May 28, 1954, appointing a trustee of the estate, and it has never been modified or set aside.

"10. On November 22, 1954, Bank of America National Trust and Savings Association, executor of the will of decedent, filed herein its Third Account Current and Report and Petition (inter alia) for Preliminary Distribution, alleging in Paragraph XXIII thereof the terms of Article Nineteenth of the will of the decedent as modified by the codicil and praying for distribution of certain principal cash and assets (enumerated in the petition and amounting to $730,945.22) in accordance with the terms of Article Nineteenth, set forth in Paragraph XXIV of the petition. On January 7, 1955, the Court ordered distribution of said principal cash and assets upon the following trusts; '[After providing for payment of income to income beneficiaries] Upon the death of the survivor of Minnie L. Trepanier and Lawrence E. O'Connor, also known as L. E. O'Connor, the remainder of the trust estate shall be divided equally share and share alike among the University of North Dakota, Academy of St. James (named in the Will as St. James School), St. Michael's Roman Catholic Church, Grand Forks, North Dakota (which operates the school named in the Will as St. Michaels school), and St. Mary's Church of Grand Forks, North Dakota (which operates the school named in the Will as St. Mary's school), each institution shall raise a sum of money equal to the share of the remainder provided for it under this paragraph, and the total of such share and of said sum so raised shall be held by each institution in trust, the income therefrom to be used for scholarship awards. Upon the failure of one or more of

the institutions named to comply with this provision within one year after such institution is entitled to the benefits named, then such share shall pass to the institutions complying with these terms. If no institution is found entitled to the benefits of this section, then the entire remainder of the trust shall be distributed to St. Michael's Hospital at Grand Forks, North Dakota.'

"11. On May 20, 1955, the estate of the decedent filed herein its Fourth Account Current and Report and Petition (inter alia) for Preliminary Distribution, praying among other things for distribution of principal assets to the trustee under the will to be administered in accordance with the Order for (inter alia) Preliminary Distribution dated January 7, 1955. Thereafter on June 13, 1955, this Court ordered distribution of principal assets, valued at $2,530.76 (inventory value), as well as income cash in the amount of $95,000.00, to the trustee under the will as follows: '. . ., in trust, to be held, administered and distributed in accordance with the Decree Determining Heirship dated April 1, 1955, and the provisions set forth in the Order Approving Third Account Current and Report of Executor and Petition for Approval of Sales, for Approval of Elimination of Parcel of Real Property Not Owned by Decedent, from Estate, for Allowance of Commission to Executor and Fee to Attorneys, for Construction of Will, and for Preliminary Distribution, dated January 7, 1955, . . . .'

"12. Each of the orders referred to in paragraphs 10 and 11 above contain recitals to the effect that notice had been regularly given in the respective proceedings as required by law. No appeal was taken by anyone from either of said orders and neither of said orders has ever been modified or set aside.

"13. Each of the foregoing persons and parties, enumerated in paragraphs 3 to 7, *supra,* claims an interest in the remainder of residue of the estate of said decedent.

"14. The rights of all persons claiming any interest as heirs or devisees of said decedent in the trust estate distributable under the terms of decedent's will have been previously determined by the orders and decrees of this Court above enumerated. IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that said J. F. T. O'Connor died testate on September 28, 1949, leaving a will which has been duly admitted to probate herein, and by the terms of said will the

whole of the residue of said estate is devised and bequeathed and the interests of all parties determined as follows: (a) The Bank of America National Trust and Savings Association, as trustee under the will of the decedent, shall receive the entire residue and remainder of the estate from the executor to hold the corpus in trust for the testamentary purposes specified and in accordance with the provisions of the decedent's Will and codicil, all as provided in previous orders of this Court in this matter; (b) Petitioners Minnie L. Trepanier and L. E. O'Connor are entitled to the net income from said residue and remainder of the estate for their lives, all as provided by previous orders of this Court in this matter; (c) Upon the death of the survivor of Minnie L. Trepanier and L. E. O'Connor, the remainder of the trust estate shall be paid to respondents University of North Dakota, St. Mary's Catholic Church, St. Michael's Catholic Church, St. James' High School and St. Michael's Hospital, in the manner and under the conditions provided in previous orders of this Court in this matter; (d) The provisions for distribution of remainder interests in the corpus of said testamentary trust to the charitable respondents above enumerated are all valid, and no other person has any interest as heir or devisee in the trust estate distributable upon the death of the survivor of Minnie L. Trepanier and L. E. O'Connor.''

Petitioners contend that the court erred in its holding that the rights of all persons claiming any interest as heirs and devisees of said decedent in the trust estate distributable under the terms of decedent's will have been determined by the previously made orders and decrees of the court.

▮ Whatever may be the effect of the previously made order appointing a trustee for the estate, the two orders for partial distribution constitute an adjudication of the validity of the trust which is now being questioned. In each of these proceedings there was a finding that notice had been regularly given as required by law. ''Proof of the giving of notice must be made at the hearing; and if it appears to the satisfaction of the court that said notice has been regularly given, the court shall so find in its order, and such order, when it becomes final, shall be conclusive upon all persons'' (Prob. Code, § 1200). (*Estate of Wise*, 34 Cal.2d 376, 385 [210 P.2d 497].) No appeal was taken by anyone from said orders (Prob. Code, § 1240), nor has any motion ever been made to modify or set them aside and they are now final. (*Estate of Tymms*, 78 Cal.App. 79, 83 [247 P. 1091].)

The petitions for preliminary distribution, on rendition of both the third and fourth accounts current, alleged the terms of Article Nineteenth of the will of the decedent as modified by the codicil and prayed for the approving order of the court to distribute some seven-tenths of the assets of the estate in accordance with the terms thereof. By its order of January 7, 1955, the court ordered distribution under the third account current specifically in the terms of Article Nineteenth as modified by the codicil. On June 13, 1955, a further distribution was ordered on the fourth account current in accordance with the provisions set forth in the order approving the third account.

"The administration of a decedent's estate involves a series of separate proceedings, each of which is intended to be final (citations), not only as to the parties who appear therein, but also as to all persons 'interested in the estate' whose rights may be affected, although they did not appear therein . . . It is settled . . . that a decree of distribution that has become final is a conclusive determination of the terms and validity of a testamentary trust and of the rights of all parties thereunder. (Citations.)" (*Estate of Loring,* 29 Cal.2d 423, 427, 428 [175 P.2d 524].) A decree of distribution which has become final is such a conclusive adjudication even though the provisions of the trust may have been erroneously construed. (*Crew* v. *Pratt,* 119 Cal. 139, 151 [51 P. 38]. See also *Wogman* v. *Wells Fargo Bank & Union Trust Co.,* 123 Cal. App.2d 657, 663 [267 P.2d 423].)

Petitioners appear to concede the validity of the binding effect of an order of final distribution but challenge its applicability to orders of preliminary or partial distribution such as are here before us. Both reason and precedent oppose them in this regard. As hereinbefore noted, an order of partial distribution is appealable and when it becomes final it is conclusive as to all persons interested in the estate whose rights may be affected.

The law is well established in this state that an order of partial distribution, made after a hearing to which all the parties were cited by due and legal notice, and which has become final and wherein the terms of the will were construed and the validity of the trust established is an adjudication of the will binding upon all the parties. (*Estate of Hartenbower,* 176 Cal. 400, 402 [168 P. 560]; *Estate of Carothers,* 168 Cal. 691, 694 [144 P. 957]; *Hardy* v. *Mayhew,* 158 Cal. 95 [110

P. 113, 139 Am.St.Rep. 73] ; *Estate of Tymms, supra,* 78 Cal. App. 79, 82, 83. See also *Estate of Kearns,* 129 Cal.App.2d 832, 839 [278 P.2d 85].)

Appellants additionally contend that the remainders created under the terms of the will in favor of the charitable beneficiaries violate the California Constitution and statutory provisions relating to restraints upon alienation. (Cal. Const., art. XX, § 9; Civ. Code, §§ 715, 716, 771 and 772, as in effect at the date of death of the testator herein, 1949.) We are unable to agree with this contention. Article XX, section 9, of the Constitution of California provides: "No perpetuities shall be allowed except for eleemosynary purposes."

Section 715 provided: "Except in the single case mentioned in section seven hundred seventy-two, the absolute power of alienation cannot be suspended, by any limitation or condition whatever, for a longer period than as follows: 1. During the continuance of the lives of persons in being at the creation of the limitation or condition; or 2. For a period not to exceed twenty-five years from the time of the creation of the suspension." Section 716 provided: "Every future interest is void in its creation which, by any possibility, may suspend the absolute power of alienation for a longer period than is prescribed in this chapter. Such power of alienation is suspended when there are no persons in being by whom an absolute interest in possession can be conveyed." Section 772 provided: "A contingent remainder in fee may be created on a prior remainder in fee, to take effect in the event that the persons to whom the first remainder is limited die under the age of twenty-one years, or upon any other contingency by which the estate of such persons may be determined before they attain majority." Section 771 made these prohibitions applicable to trusts.

By the terms of the will two of the petitioners are to receive the net income from the estate so long as they live, the remainder on their death to be paid to the four charitable institutions named, subject to their then qualifying as therein provided, but in any event on failure of all such institutions to qualify, the residue to be distributed to St. Michael's Hospital.

These petitioners are "persons" in being at the time of the creation of the conditions. The named charitable institutions are "eleemosynary" as to their purposes and are specifically exempted by article XX, section 9, of the Constitution of California, from any prohibition of perpetuities. It is

thoroughly settled in this state that the code provisions respecting suspension of the power of alienation have no application to charities and charitable uses. (*Estate of Coleman,* 167 Cal. 212, 214 [138 P. 992, Ann.Cas. 1915C 682]; *Estate of Hinckley,* 58 Cal. 457; *People* v. *Cogswell,* 113 Cal. 129 [45 P. 270, 35 L.R.A. 269]; *Collier* v. *Lindley,* 203 Cal. 641 [266 P. 526]; *Dingwell* v. *Seymour,* 91 Cal.App. 483 [267 P. 327].)

The remainders created in the University of North Dakota, St. James, St. Michael's and St. Mary's schools are all vested remainders, subject to later divestment on the occurrence or nonoccurrence of the conditions subsequent specified in the will. Probate Code, section 143, defines condition subsequent as: "A condition subsequent is where an estate or interest is so given as to vest immediately, subject only to be divested by some subsequent act or event. A testamentary disposition when vested, cannot be divested unless upon the occurrence of the precise contingency prescribed by the testator for that purpose."

▉ In construing the language of a bequest the primary common law rule in favor of early vesting of title in remaindermen and the preference for vested rather than contingent remainders is firmly established in this state. (See *Estate of Stanford,* 49 Cal.2d 120, 124 [315 P.2d 681] and cases therein cited.) As said in the Stanford case at page 125, "The conclusion that the remainder is vested, and not subject to any condition precedent, is regarded as being based upon the theory that there is a person in being to whom the seisin could pass . . . This proposition can be stated in another way: the mere fact that the entire membership of the class cannot be determined until some later time when the interest becomes possessory does not mean that there is a condition precedent that the existing members of the class must survive until that time in order to partake of present ownership. *Only rarely does a court reach a contrary result.*"

▉ So here we find that under the will, upon the death of the last remaining of petitioners for whose benefit the residue of the estate has been held intact for purposes of their receiving its income, the remainder of the estate shall be divided, share and share alike among the four named charitable beneficiaries. As so worded it is clear that the testator intended that title should vest in each of them at his death leaving only the matter of division of the remainder to be made to them on the happening of the death of the survivor of such petitioners. There is nothing in the will to prevent the

then immediate payment of its share to each such beneficiary excepting the provision that each shall, within one year, raise a sum of money equal to the share it is scheduled to receive, the total sum to be used for scholarship awards. In event of a failure to meet this condition subsequent within the prescribed period the beneficiary is divested of any further right thereto. In event all four of such beneficiaries so fail, the residue shall be distributed to the fifth named entity, St. Michael's Hospital at Grand Forks, North Dakota.

A somewhat analogous situation is found in *Newlove* v. *Mercantile Trust Co.*, 156 Cal. 657 [105 P. 971]. There a father willed his property to his six sons, share and share alike, and provided that no portion thereof should be sold until 10 years after his death, and that, should any of his sons contract certain enumerated bad habits before such division his share should be forfeited. It was held that each of the sons acquired a vested interest at the time of the testator's death in the undivided share devised to him, subject to divestiture or termination upon the happening of the subsequent act or event specified in the will. (See also *Buttram* v. *Finley*, 37 Cal.App.2d 459 [99 P.2d 1093].)

The last-named beneficiary, St. Michael's Hospital, takes under the will upon a condition precedent in that it shall receive any benefits thereunder only in event of the failure of all of the four previously named charitable beneficiaries to qualify. Accordingly, its interest in the residue could not vest until such failure had become final when taken with the lapse of the prescribed period. Until that time it has a mere expectancy in the estate bequeathed. (*Estate of Jameson*, 93 Cal.App.2d 35, 40 [208 P.2d 54]; Prob. Code, § 142.) In the interim, title vested in the four beneficiaries subject to divestiture. In the event of divestiture the trust estate would become the property of St. Michael's Hospital. As to it no trust is established and it would take title with no restrictions upon its use. It is subject to no restraint on alienation and would be an absolute fee in possession. (See *Estate of Campbell*, 149 Cal. 712, 718 [87 P. 573].)

We have considered the other incidental points raised by appellants but deem further discussion as to them unnecessary.

The order on petition to determine heirship from which this appeal is taken is affirmed.

Fox, P. J., and Ashburn, J., concurred.