907 P.2d 794 (1995)
127 Idaho 817
In the Matter of the ESTATE OF Muriel H. KIRK.
In the Matter of the MURIEL H. KIRK FAMILY TRUST.
Fred G. SALFEETY, Appellant/Appellant on Appeal/Cross-Respondent,
v.
A. Wesley SEIDEMAN, Respondent/Respondent on Appeal/Cross-Appellant.
No. 21120.
Supreme Court of Idaho, Boise, January 1995 Term.
November 30, 1995.
*797 Brauner, Coffel & Young, Caldwell; Hodsdon & Bergen, Kennebunk, Maine, for appellant. Stephen Y. Hodsdon argued.
Peterson Law Offices, Lewiston, for respondent. Philip E. Peterson argued.
SILAK, Justice.
This is an appeal by the decedent's nephew Fred G. Salfeety (Salfeety) from a district court decision affirming the magistrate court's order that the decedent's inter vivos trust was a valid, enforceable trust and that the various specific gifts should be delivered to the designated persons and organizations. This action was initiated upon the trustee's filing of the Petition for Construction of Trust. We affirm the magistrate's order.

I.

FACTS AND PROCEDURAL BACKGROUND
The decedent in this case, Muriel H. Kirk (Mrs. Kirk), died on May 20, 1992, at the age of 85. Mrs. Kirk apparently was a highly intelligent and articulate woman, and a lawyer who practiced for a period of time in Oklahoma. She also became a realtor, traveled extensively, and flew a plane, and lived a busy life in Boise. The testimony of witnesses indicated that she had a direct and take-charge manner. Mrs. Kirk had one daughter, Diana Kirk (Diana), who preceded her in death.
In the years before her death, Mrs. Kirk executed seven instruments. The first such document executed by Mrs. Kirk was her Last Will and Testament (the Will) on December 11, 1989. On the same day she executed the second instrument, a revocable trust agreement entitled the Muriel H. Kirk Family Trust (the Trust) with herself as trustee. She named West One Bank, N.A. Trust Department (the Bank) as successor trustee upon her death and as personal representative in her Will. The Trust was registered in Ada County and was funded. The Will pours over into the Trust.
The third instrument was the First Amendment to the Trust, executed by Mrs. Kirk on June 7, 1990. In that amendment, she eliminated the entire Section 4.5 of the Trust governing termination of the Trust because her daughter Diana had died on December 13, 1989. This change eliminated two of the three beneficiaries named in Section 4.3 of the original Trust, Diana and the Assistance League of Boise, Idaho. This left the remainder of the Trust assets to the Milton Academy of Milton, Massachusetts as sole beneficiary in her daughter's memory. Diana had attended school there. Mrs. Kirk caused the First Amendment to be delivered to the Bank.
At the same time, Mrs. Kirk executed the fourth instrument, a codicil to her Will. The codicil confirmed and republished the remaining portions of her Will.
On October 18, 1990, Mrs. Kirk executed the fifth instrument, the Second Amendment to the Trust. The relevant effect of the Second Amendment was to eliminate, in Section 4.4, the sole remaining beneficiary of the Trust, the Milton Academy. The Amendment stated that the Academy had introduced Diana to smoking which ruined her life. Apparently recognizing that this elimination left a gap in her estate plan, Mrs. Kirk included in Section 4.3 of the Second Amendment, the following:
After the death of the Grantor, the Trustee shall hold, manage and control the property comprising the Trust estate for beneficiaries to be named in an attached sheet, which will be added to from time to time.
*798 In addition to Nile Clark and Allen Derr of Boise, who were named in the original Trust as co-trustees, Mrs. Kirk named Donna Shepard and Joyce Denning as co-trustees in the Second Amendment to the Trust.
The Second Amendment also provided in Section 7.1 that the Bank, in consultation with Clark and Derr, was to have the final decision on the sale of real estate, and that Donna Shepard was to handle the sale of all of Mrs. Kirk's personal property, consulting with Joyce Denning. Mrs. Kirk commented in the amendment that "both of these friends are highly experienced with exceptional furniture, jewelry, etc. ART AND COLLECTIBLES". A signed original of the Second Amendment was delivered to the Bank.
The sixth instrument is a one page typed document dated October 18, 1990, and signed by Mrs. Kirk (the possession list). The first paragraph of this document states: "Possessions I would like some of my friends to have when I am gone and they can no longer enjoy my company". This possession list left gifts of personal items to three people, a gift of oil holdings to the Assistance League and a direction to convert certain items to cash to be applied to a memorial garden at Boise's Botanical Garden "for Judge Allan Shepard and a Memorial Garden for Diana Dorothy Kirk". This document was delivered to the Bank along with the Second Amendment to the Trust.
Following Mrs. Kirk's execution and delivery of the Second Amendment, Respondent A. Wesley Seideman (Seideman), a trust officer at the Bank, and the person at the Bank with whom she had been dealing, wrote a letter to Mrs. Kirk on October 29, 1990, expressing his concern about her inclusion of the income from the oil and gas leases within the possession list. He apparently had also expressed concern to Mrs. Kirk during at least two conversations he had with her in early 1991, that the Trust was incomplete, i.e., that it lacked distributive provisions. Seideman's concern was that while the Trust adequately disposed of tangible personal property, he believed there to be a question as to the residual estate.
The seventh instrument before the Court is an undated, handwritten document (the Script), which attempts to effectuate a testamentary disposition of her property. The Script was written on the torn-off receipt section of a Medicare check, and was stapled to the Trust instrument to which it pertained, the Second Amendment. The document begins: "If anything happens to me on the trip to La Jolla, the following things to go to the named people". The Script states: "Donna and Joyce will take plenty of time to sell other property at proper prices [no rushed sale Brooks!] then 1/3 goes to law chair for Donna's Allen2/3 to Botanical Garden for English garden dedicated to Muriel and Diana". The trial court found the Script to be in Mrs. Kirk's handwriting. Unlike all six of Mrs. Kirk's instruments described above, the Script was not delivered to the Bank.
Mrs. Kirk did drive to La Jolla, it is presumed sometime in March 1992, and returned without incident. She died quite unexpectedly not long after her return on May 20, 1992. After her death, her Will and codicil, the Trust and amendments and the Script were found in a binder in her home.
On November 23, 1992, Seideman, in his capacity as the personal representative of Mrs. Kirk's estate, and co-trustee of the Trust, filed a petition for construction of the Will and the Trust, urging that the Script be found to be a valid amendment to the Trust and that the estate be distributed in accordance with the Script. Thereafter, Salfeety filed an answer and protest to the Seideman's petition.
Salfeety was Mrs. Kirk's nephew, her sister's son. He was located in Maine by an heir search ordered by the Bank in an effort to give notice in the probate of Mrs. Kirk's estate. Although Salfeety is apparently Mrs. Kirk's sole heir and closest living relative, the two barely knew each other. During his testimony at the trial before the magistrate court, Salfeety described a very remote connection to Ms. Kirk. He testified that he first met her at his mother's funeral, and before that he had not even had much contact with his mother. His parents were divorced and he had been raised by his father's family. He stated that Mrs. Kirk was in a different socio-economic bracket and that any *799 contact was up to her. He had not seen her or had any contact with her for twenty to thirty years.
The magistrate construed the validity and legal effect of the various documents as urged by Seideman. Salfeety appealed to the district court. The district court affirmed the magistrate's decision, although on different grounds. The district court ruled that the Idaho mortmain statute, I.C. § 15-2-615, was unconstitutional on grounds of violation of equal protection. Salfeety appeals and Seideman cross-appeals.

II.

ISSUES ON APPEAL
A. Whether the district court, while correctly deciding that the Script violates the Idaho mortmain statute I.C. § 15-2-615, erred in determining that statute to be unconstitutional due to a violation of equal protection.
B. Whether the magistrate erred in admitting certain extrinsic and parol evidence.
1. Whether the language of Mrs. Kirk's estate plan is unambiguous so as to preclude a resort to parol evidence in ascertaining her intent.
2. Whether the magistrate's reliance on parol evidence violates the statute of frauds, I.C. § 9-503.
3. Whether the magistrate erred in admitting and relying upon Mrs. Kirk's prior wills for any purpose other than to show her past adherence to formalities required in the execution of testamentary instruments, and whether the district court erred, while correctly recognizing the magistrate's inappropriate admission of those prior wills, in not ordering appropriate sanctions or relief from such erroneous admission.
C. Whether the magistrate erred in finding or concluding that Mrs. Kirk amended the amendatory procedure of the Trust as prescribed in Article IX Section 9.1 of the Trust.
D. Whether the magistrate erred in determining the Script to be a valid amendment to the Trust:
1. By finding that Mrs. Kirk complied with all of the requirements required by the Trust instrument for its valid amendment;
2. By concluding that the doctrine of incorporation by reference, as codified in I.C. § 15-2-510, is inapplicable to the Script, or that, in any event, the Script met its requirements;
3. By deciding the Script to be other than purely conditional in its terms.
E. Whether the magistrate erred in determining that the language of the possession list does not offend the statutory rule against suspension of the power of alienation, I.C. § 55-111.
F. Whether the magistrate erred in construing the term in the Script "other property" to mean all Mrs. Kirk's remaining property, rather than limiting its effect to disposition of tangible personal property and the proceeds of their sale.

III.

ISSUES ON CROSS-APPEAL
A. Whether the district court erred in reversing the magistrate's conclusion that the mortmain statute was inapplicable to this case since a trust, not a will, was the document at issue.
B. Whether the district court erred in reversing the magistrate's ruling admitting several earlier wills executed by Mrs. Kirk in which Mr. Salfeety was not mentioned and there were charitable devisees.
C. Whether Seideman is entitled to costs including reasonable attorney's fees on this appeal for the reason that Salfeety simply disagrees with the decision of the courts below on a plethora of issues.

IV.

ANALYSIS

A. THE IDAHO MORTMAIN STATUTE, DOES NOT APPLY TO THIS CASE.
Preliminarily, we note our standard of review as to all issues. When this Court *800 reviews a case appealed from a district court's appellate review of a magistrate's decision, we make an independent appellate review of the magistrate's decision, after giving due regard to the district court's ruling. Ausman v. State, 124 Idaho 839, 840, 864 P.2d 1126, 1127 (1993); In re Estate of Reinwald, 122 Idaho 401, 402, 834 P.2d 1317, 1318 (1992). If substantial and competent evidence supports the magistrate court's findings of fact, we will uphold those findings on appeal. Ausman v. State, 124 Idaho at 841, 864 P.2d at 1128. However, on issues of law this Court exercises free review. Id.
Salfeety argued before the magistrate that the handwritten Script providing for the remainder of Mrs. Kirk's property to be donated to the University of Idaho School of Law for a law chair in the name of Allan Shepard and to the Idaho Botanical Gardens for a memorial in honor of herself and her daughter Diana, violated Idaho's mortmain statute, former I.C. § 15-2-615, which prohibits a testator from making charitable devises within 120 days of his or her death.[1] The magistrate ruled that the mortmain statute only applied to wills, not trusts, and that it was not designed to prohibit amendments to trusts. On appeal, the district court held that although the statute did apply to trusts, it was unconstitutional "due to a violation of equal protection."
We agree with the magistrate that the mortmain statute is inapplicable to this case. Former I.C. § 15-2-615(a) provided:
No estate, real or personal, shall be bequeathed or devised to any charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses, except the same be done by will duly executed at least one hundred twenty (120) days before the death of the testator; and if so made at least one hundred twenty (120) days prior to such death, such devise or legacy, and each of them, shall be valid; provided, however, that the foregoing limitation shall not apply to wills of persons whose death is caused by accidental means and whose wills are executed prior to the accident which results in death.
(Emphasis added.) Clearly, this statute refers to gifts made to charities through a will, not a trust. A "bequest" and a "legacy" are dispositions of personal property by will, see Black's Law Dictionary 160, 891 (6th ed. 1990). A "devise" is a testamentary disposition of real or personal property by will. I.C. § 15-1-201(10). These terms refer to testamentary gifts which are meant to take effect after the death of the testator. The magistrate stated that arguably, the effect of a disposition such as Mrs. Kirk's is exactly the same as though she had made a charitable bequest in a will, and should be treated as such by the court. The magistrate concluded, however, that pursuant to I.C. § 15-2-511, which allows testamentary additions to trusts, the Script was not a testamentary trust. We agree and hold that the trust documents in question here, including the Script, comprise an inter vivos trust. The mortmain statute by its own terms refers only to wills. Thus, we hold that the former mortmain statute, I.C. § 15-2-615, is inapplicable in this case because the documents at issue comprise an inter vivos trust, not a will. Having so determined, we need not reach the issue of the constitutionality of the mortmain statute.

B. THE MAGISTRATE DID NOT ERR IN ADMITTING CERTAIN EXTRINSIC AND PAROL EVIDENCE.

1. Because the Language of Mrs. Kirk's Estate Plan Was Ambiguous With Respect to the Meaning of the Script, a Resort to Parol Evidence to Determine Her Intent Was Not Precluded.

The introductory language in the Script read:
If anything happens to me on the trip to La Jolla, the following things to go to the named people
Thus, one of the issues at the trial level was Mrs. Kirk's intent in using this conditional language. The magistrate found that the question was whether the gifts in the Script were conditional on something happening to Mrs. Kirk on her trip to La Jolla, or whether they were intended to be operative even if *801 she returned. The magistrate determined that an ambiguity was created by use of the conditional language and then attaching it to the Trust amendment. The testimony of two witnesses, Joyce Denning and Donna Shepard, was admitted and relied upon by the magistrate in concluding that the gifts were not conditional. We hold that because an ambiguity existed with respect to the meaning of the Script, the magistrate properly admitted this parol evidence to determine Mrs. Kirk's intent.
Parol evidence may be considered to aid a trial court in determining the intent of the drafter of a document if an ambiguity exists. Hall v. Hall, 116 Idaho 483, 484, 777 P.2d 255, 256 (1989). A patent ambiguity is one which is evident from the face of the instrument. A latent ambiguity is not evident on the face of the instrument alone, but becomes apparent when applying the instrument to the facts as they exist. See Williams v. Idaho Potato Starch Co., 73 Idaho 13, 20, 245 P.2d 1045, 1049 (1952) ("[P]arol evidence cannot be received to contradict, vary, add to or subtract from the terms of an unambiguous written agreement, but ... there are some well recognized exceptions to this rule which includes, as does this case, a situation where a latent ambiguity might not appear upon the face of the contract, but lies hidden in the subject to which it has reference ...").
In the present case, the document containing the conditional language, the Script, had been physically attached to the Second Amendment, the amendment which explained the method by which Mrs. Kirk's intent could be expressed. Mrs. Kirk placed these documents in a three ring notebook with her other estate planning documents. This action signifies a degree of permanence, inconsistent with the expressed condition. This extrinsic evidence introduced a latent ambiguity. To resolve the ambiguity, the magistrate admitted testimony of Joyce Denning and Donna Shepard regarding statements made by Mrs. Kirk to them as to Mrs. Kirk's testamentary intent. Their testimony, together with the fact that the Script had been attached to the Second Amendment, resolved the ambiguity and led the trial court to conclude that, without regard to the conditional language, Mrs. Kirk intended the Script to be absolute, and that she intended the document to serve as a dispositive instrument until she found the time to formalize her language. Thus, we hold that the trial court properly admitted parol evidence to resolve the latent ambiguity created by the conditional language of the Script as well as the stapling of the document to the Second Amendment.

2. The Magistrate's Reliance on Certain Parol Evidence Did Not Violate the Statute of Frauds, I.C. § 9-503.

I.C. § 9-503, the Statute of Frauds, provides as follows:
Transfers of real property to be in writing. No estate or interest in real property, other than for leases for a term not exceeding one (1) year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing.
The Muriel H. Kirk Family Trust was created by written instrument, duly executed, and her real property was transferred to the Trust by deeds of record. All other transfers of real property relevant in this case were by written documents. The October 18, 1990 possession list relating to the oil and gas leases was in writing and was subscribed by Mrs. Kirk. Even the questioned Script was in writing. Thus, because all of the documents in this case which purport to transfer or convey real property are in writing and subscribed by Mrs. Kirk, we hold that there is no violation of I.C. § 9-503. We further hold that because there was a formal, fully executed Trust with amendments which supply any terms not contained in the Script, no parol evidence was needed to supply any missing terms.

*802 3. The Magistrate Properly Admitted and Relied Upon Mrs. Kirk's Prior Wills to Show Her Intent.

The magistrate admitted five prior, revoked wills executed by Mrs. Kirk at earlier dates and at a time when her daughter Diana was alive to demonstrate the fact that Mrs. Kirk had not mentioned Salfeety in any of these wills and had made charitable devises even while her daughter was alive and was her principal beneficiary. The district court ruled that the magistrate erred in considering the earlier wills because they could be considered only if one of the parties claimed that the December 11, 1989 will was invalid for some reason and that an earlier will should be revived. On appeal, Salfeety argues that the revoked wills were not relevant for any purpose other than possibly to show that Mrs. Kirk was familiar with the formalities of executing a final set of testamentary instruments.
We agree with the ruling and reasoning of the magistrate with respect to whether the revoked wills were admissible, and hold that they were relevant to show Mrs. Kirk's intent. Rule 401 of the Idaho Rules of Evidence defines relevant evidence as:
... [e]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Since the intent of Mrs. Kirk is at issue in this case and the prior wills are indicative of her disposition toward Salfeety and toward charities in general, this evidence is clearly relevant to show her intent in disposing of her property. The five prior wills are relevant to show that Mrs. Kirk intended to effect a complete testamentary scheme through the wills and trust instruments she created over a number of years. All but the Script were executed formally. She funded the Trust by deeds of her real property and transfers of much of her personal property. We agree with the magistrate that "[t]here can be no question but that she intended her property to be distributed pursuant to the family trust and did not intend to leave an intestate estate which would pass to her virtually unknown nephew."
Thus, we hold that the magistrate was correct in admitting the evidence. The wills were not offered as testamentary documents; they were offered as relevant evidence to shed light on Mrs. Kirk's donative intent. The fact that they were revoked by later wills does not affect their relevance as to the decedent's frame of mind.

C. THE MAGISTRATE PROPERLY CONCLUDED THAT MRS. KIRK AMENDED THE AMENDATORY PROCEDURE OF THE TRUST AS PRESCRIBED IN ARTICLE IX, SECTION 9.1 OF THE TRUST, AND THAT THE SCRIPT WAS A VALID AMENDMENT TO THE TRUST.
Article IX, Section 9.1 of the unamended Trust provides:
The Grantor may at any time during her lifetime amend the provisions of the MURIEL H. KIRK FAMILY TRUST by an instrument signed by the Grantor and delivered to the Trustee.
Pursuant to the terms of the Trust, Mrs. Kirk was not only the grantor, but the trustee as well, at least until her death at which time the Bank became the successor trustee.
The magistrate found that the Second Amendment to the Trust, an amendment which met the requirements for amendment of the original document, introduced a different procedure for designating Mrs. Kirk's beneficiaries. Article Two, Sec. 4.3 of the Second Amended provided:
After the death of the Grantor, the Trustee shall hold, manage and control the property comprising the Trust estate for beneficiaries to be named in an attached sheet, which will be added to from time to time.

(Emphasis added.) We agree with the magistrate that the above language in the Second Amendment constituted an amendment to the amendatory procedure. The evidence which proves that Mrs. Kirk intended to amend the procedure is that on two different occasions she followed the new procedure. The first time was on the date she executed the Second Amendment, October 18, 1990, on which Mrs. Kirk also signed the typed possession *803 list and attached it to the original amendment, thus literally complying with the terms of her own directions. The second time Mrs. Kirk followed the new amendatory procedure was upon her creation of the Script. She stapled the Script to the Second Amendment and placed all three documents into a three-ring binder.
Salfeety argues that the requirement for amending the Trust, as set forth in Article IX, Section 9.1, remained unchanged throughout Mrs. Kirk's life. Salfeety relies on the following language found in both the First and Second Amendments:
In compliance with the terms of this Trust, the Grantor will send a copy of this Amendment to the original successor Trustee, WEST ONE Bank Idaho, N.A., 101 S. Capitol Blvd., Boise, Idaho 83702, Attn: Wesley Seideman.
Salfeety claims that by using this language, Mrs. Kirk expressly confirmed that the amendment procedure was to remain as set forth in the original Trust instrument.
We find Salfeety's argument to be without merit. Mrs. Kirk did deliver the First Amendment, and Second Amendment with the attached possession list, to the Bank. The Script was not delivered to the Bank, but the language of the Second Amendment did not require that she do so. The "attached sheet" was to be "added to from time to time," but there is no specific requirement, either in the Second Amendment, Article Two, Sec. 4.3, or in the language quoted concerning delivery to the successor trustee of the Bank, that the additions made from time to time to the attached sheet be delivered to the Bank. The only requirement for delivery was of "this Amendment," which the record reflects consisted of the typed Second Amendment, consisting of two typewritten pages, signed by Mrs. Kirk and notarized, comprising articles one, two and three. Thus, we hold that the fact the Script was not delivered to the Bank does not invalidate the Script, because delivery of the Script was not required.
Salfeety next argues that the magistrate erred in determining the Script to be a valid amendment to the Trust. He makes three arguments as to why the trial court erred. We affirm the ruling of the magistrate.

1. Mrs. Kirk Complied With All of the Requirements of the New Amendatory Procedure of the Second Amendment For a Valid Amendment to the Trust.

As we held above, Mrs. Kirk amended the amendatory procedure in the October 18, 1990 Second Amendment to the Trust. This new procedure required that when she wished to designate beneficiaries, which she intended to do from time to time, she could add to the "attached sheet." That is exactly what Mrs. Kirk did with the Script. She handwrote a list of beneficiaries and stapled it to the Second Amendment and kept everything together in a binder. The new procedure did not require that the document adding beneficiaries from time to time be typed, that she sign it or that it be delivered to the Bank in order to be valid. Thus, we uphold that the magistrate's decision that the Script validly designated beneficiaries.

2. The Doctrine of Incorporation By Reference is Inapplicable to the Script.

Salfeety argues that the magistrate erred in determining the Script to be a valid amendment to the Trust by concluding that the doctrine of incorporation by reference, as codified in I.C. § 15-2-510, is inapplicable to the Script, or that, in any event, the Script met its requirements. I.C. § 15-2-510 of the Uniform Probate Code provides:
Incorporation by reference.Any writing in existence when a will is executed may be incorporated by reference if the language of the will manifests this intent and describes the writing sufficiently to permit its identification.
This statute essentially provides that an unattested instrument can be incorporated in a will by reference to it in the will, with the effect that it then becomes part of the will. It is necessary that the instrument be in existence at the time of the execution of the will and that the will refer to it as an existing instrument. See IA Austin Wakeman Scott & William Franklin Fratcher, Scott on Trusts § 54.1 (4th ed. 1987).
*804 Salfeety claims that the common law doctrine of incorporation by reference is applicable to trusts as well as wills, relying on 90 C.J.S. Trusts, § 164 (1955). This section discusses the following concept:
Two or more instruments relating to a trust may, or should, be construed together to effectuate the settlor's intention; but particular instruments may be regarded as not so related as to require or justify consideration together.
While the doctrine of incorporation by reference may apply to the law of trusts, we hold that it is inapplicable here. The provision from Corpus Juris Secundum, quoted above, refers to two or more instruments being construed together. In the present case, we do not consider the Script to be a separate instrument, but rather a part of the Trust. The Script was validly created pursuant to the Second Amendment and was then stapled to it, as required by the new amendatory procedures. Thus, the Script is not a separate instrument from the Trust which would require incorporation by reference in order for it to be valid.
The principle that does apply in this case is that "[a] trust instrument must be construed as a whole, all parts being considered and each being read in the light of the whole instrument." 90 C.J.S. Trusts, § 161(g)(1) (1955). See Trust Created Under Will of Damon, 76 Hawai`i 120, 869 P.2d 1339, 1343 (1994) ([t]o determine settlor's intent, trust must be read as a whole, not in fragments); Matter of Estate of Pickrell, 248 Kan. 247, 806 P.2d 1007, 1013 (1991) ([t]he intention of a trust settlor as gathered from the whole trust instrument must control unless contrary to settled principles of law.) Idaho has also recognized the general rule of construction that when two or more instruments are being considered, they should be construed as a whole in order to determine the intent of the parties. See Hunt v. Capital State Bank, 12 Idaho 588, 598, 87 P. 1129, 1131 (1906) ("The writing of February 3d deposited in escrow became, upon acceptance of its conditions by the interveners, merged in the contracts between the parties, and the contracts thus merged and modified must be construed as a whole"); Silver Syndicate, Inc. v. Sunshine Mining Company, 101 Idaho 226, 235, 611 P.2d 1011, 1020 (1979) ("Once the trial court has ascertained that a total rescission of the earlier contract has not been effected, the two instruments must be read and construed as one in order to determine the intent of the parties and what portion of the agreements are still enforceable.") Thus, when considered as a whole, it is clear that Mrs. Kirk intended the Script to designate the beneficiaries named in it.

3. The Magistrate Properly Found the Script Not to Be Conditional in Its Terms.

As previously stated, an issue at the trial level was whether the introductory language of the Script made the gifts conditional on something happening to Mrs. Kirk on her trip to La Jolla, or whether they were intended to be made even if she returned. The magistrate found the phrase, "[i]f anything happens to me on the trip to La Jolla ..." to be gratuitous and that it was not meant to be a condition. We agree.
The intent of Mrs. Kirk is the issue here, i.e., what she meant by the language. Without the introductory phrase, the Script makes sense in conjunction with the amendment language and is consistent with Mrs. Kirk's intentions as expressed to other people. Joyce Denning and Donna Shepard testified about their ongoing relationship with Mrs. Kirk and about her enthusiasm for the gifts she wanted to give. Further, Ms. Denning and Ms. Shepard testified about conversations in which Mrs. Kirk expressed her desire to make the gifts after her return from La Jolla. We thus agree with the magistrate that despite the language utilized by Mrs. Kirk in the Script, her statements demonstrated the fact that her intent was to the contrary: the gifts were not intended to be conditional.
Mrs. Kirk did return from the trip to La Jolla and preserved the Script during the remaining months of her life. It is consistent with the pattern of bequests established in her several previous wills. It is clear that she intended to die testate. If the Script, however, were found to be conditional, almost all of Mrs. Kirk's estate would pass by *805 intestacy to Salfeety, a result she clearly did not intend. Thus, we hold that the Script was absolute even though the introductory language sounded conditional, and that Mrs. Kirk intended to make the gifts as stated in the Script.

D. THE MAGISTRATE PROPERLY FOUND THAT THE LANGUAGE OF THE OCTOBER 18, 1990 POSSESSION LIST DOES NOT OFFEND THE STATUTORY RULE AGAINST SUSPENSION OF THE POWER OF ALIENATION PURSUANT TO I.C. § 55-111.
Mrs. Kirk's October 18, 1990 possession list provides, in pertinent part:
THE ASSISTANCE LEAGUE OF BOISE: All income from both Diana and Muriel's oil holdings in Texas, Louisiana, or wherever ... These leases are not to be sold, but held for monthly income.
The Script also provides that the income from the oil and gas leases is to be given to the Assistance League and that the leases are not to be sold.
The Trust was originally funded by the transfer of deeds to Mrs. Kirk's real property to the Trust. The Script, which we find to be a valid amendment to the Second Amendment, provides, after making certain specific gifts of personal property to named individuals, that Donna Shepard and Joyce Denning will sell the other property and distribute the proceeds as follows: one-third for the law chair in the name of the late Justice Allan Shepard, and two-thirds to the Idaho Botanical Gardens. We conclude that the "other property" includes all of Mrs. Kirk's remaining personal property and the real property which funded the Trust.
Salfeety argues that the above dispositions violate I.C. § 55-111 because the real property, including the oil and gas leases, could conceivably remain within the Trust for a period longer than 25 years. Section 55-111 provides:
Suspension of power of alienation.The absolute power of alienation of real property cannot be suspended by any limitation or condition whatever, for a longer period than during the continuance of the lives of the persons in being at the creation of the limitation or condition, and 25 years thereafter; there shall be no rule against perpetuities applicable to real or personal property, nor any rule prohibiting the placing of restraints on the alienation of personal property; no trust heretofore or hereafter created, either testamentary or inter vivos, shall be declared void, but shall be so construed as to eliminate parts violating the above provisions, and in such a way that the testators or trustors wishes are carried out to the greatest extent permitted by this act; that there shall be no presumption that a person is capable of having children at any stage of adult life.
This statute pertains only to real property. All of the remaining property in the trust is to be sold (with the exception of the oil and gas leases), and the proceeds given to charities. Even though the oil and gas leases are not to be sold, the income from such property is to go to charity. We hold that Mrs. Kirk's Trust does not violate this section because such rule on the suspension of power of alienation does not apply to charitable trusts. Although a case of first impression in Idaho, this is the rule in numerous jurisdictions. See, e.g., Nelson v. Kring, 225 Kan. 499, 592 P.2d 438, 442 (1979) (charitable trusts are not subject to the rule against perpetuities and might legally be in perpetuity); Good Samaritan Hosp. & Medical Ctr. v. United States Nat'l. Bank, 246 Or. 478, 425 P.2d 541, 543 (1967) ([i]f the Old Peoples Home qualifies as a charitable association, the trust would not be subject to the rule against perpetuities); Olivas v. Board of Nat'l. Mis. of Presbyterian Church, 1 Ariz. App. 543, 405 P.2d 481, 485 (1965) (rule against perpetuities is not applicable to charitable trusts); In re O'Connor's Estate, 158 Cal.App.2d 187, 322 P.2d 616, 621-22 (1958) (code provisions respecting suspension of the power of alienation have no application to charities and charitable uses); In re Coleman's Estate, 167 Cal. 212, 138 P. 992 (1914) (code section providing that the absolute power of alienation cannot be suspended by any limitation or condition whatever for a longer period than the lives of persons in being at the creation of the limitation or *806 condition, does not apply to charities and charitable uses). The public policy reason that charitable trusts should be treated differently than private trusts with respect to the applicability of I.C. § 55-111 is the great benefit to society arising from charitable trusts. See, e.g., Olivas v. Board of Nat'l Mis. of Presbyterian Church, 405 P.2d at 485.
The only gift which could potentially violate I.C. § 55-111 is Mrs. Kirk's gift of the income from the oil and gas leases to the Assistance League of Boise because she specifically states in the possession list and the Script that these leases shall not be sold. However, because this is a gift to charity and because we hold that I.C. § 55-111 is not applicable to a charitable trust, this is a valid gift. We further hold that with respect to the remaining real property in the Trust, I.C. § 55-111 is not violated since the property was to be immediately sold upon Mrs. Kirk's death and the proceeds distributed to the designated charities. Thus, there was no suspension of the power of alienation of the real property in this case.
Salfeety next argues that even if I.C. § 55-111 does not apply to trusts, the possession list was part of the will, not the Trust, and that the gift to the Assistance League must therefore fail. We agree with the magistrate that the possession list was part of the Trust. Following Mrs. Kirk's death, it was found in the three-ring binder physically attached to the Second Amendment and the Script, both of which are parts of the Trust.

E. THE MAGISTRATE DID NOT ERR IN CONSTRUING THE TERM IN THE SCRIPT "OTHER PROPERTY" TO MEAN ALL MRS. KIRK'S REMAINING PROPERTY, RATHER THAN LIMITING ITS MEANING TO DISPOSITION OF TANGIBLE PERSONAL PROPERTY AND THE PROCEEDS OF SALE THEREOF.
The residuary clause of the Script provides:
Donna and Joyce will take plenty of time to sell other property at proper prices (no rushed sale Brooks!) then 1/3 goes to law chair for Donna's Allen2/3 to Botanical Garden for English Garden dedicated to Muriel and Diana
Salfeety argues that since all of the property described elsewhere in the Script is personal property, the direction to sell in the above paragraph is necessarily limited to personal property and therefore the remaining real property must pass to him through partial intestacy. We disagree.
There is a strong presumption against intestacy, particularly where the subject of the gift is the residuary estate. In re Hartwig's Estate, 70 Idaho 77, 82, 211 P.2d 399, 402 (1949). The construction urged upon the Court by Salfeety would leave all the real property owned by Mrs. Kirk, the vast bulk of her property, by intestacy to a nephew who was not mentioned in any will or trust document of the decedent.
The magistrate determined that the intent of Mrs. Kirk was to dispose of all her property and we hold that this conclusion is supported by the law and the facts. The primary function of a court when construing a trust is to carry out the intent of the settlor. See, e.g., Shurrum v. Watts, 80 Idaho 44, 53, 324 P.2d 380, 385 (1958) (Holding that the intention of the parties determines whether a resulting trust arises); Vaughan v. First Federal Savings & Loan Ass'n, 85 Idaho 266, 276, 378 P.2d 820, 826 (1963) ("If there exists in the mind of a depositor an intention that he or some other person shall be a trustee and he expresses that intent although the words `in trust' or `trustee' are not used, his intention will prevail and the trust will be declared to have been created.") The Trust was created and funded by several deeds conveying the real property to the Trust and also personal property, including cars, furniture, art and the like. Section VIII of the Will provides: "I give my residuary estate ... to be added to the principal of the Trust ..." Art. II, Sec. 4.3 of the Trust, as amended, provides that the Trustee shall hold the property comprising the Trust for beneficiaries to be named in an attached sheet. The attached sheet, i.e., the Script, *807 names the beneficiaries. While there are some relatively minor conflicts, the essentials of a complete disposition are present. Thus, it is difficult to imagine that Mrs. Kirk would spend so much time and trouble making wills, trusts and amendments thereto, and substantially fund the Trust with her real property, if her intention was that the bulk of her estate in the real property should pass to her virtually unknown nephew through intestacy. We cannot give such an unjust effect to the Trust documents.

V.

CONCLUSION
First, we hold that the handwritten Script does not violate the former mortmain statute, I.C. § 15-2-615, because the statute only applies to wills. The Script is part of a fully funded inter vivos trust.
Second, we hold that the magistrate did not err in admitting certain extrinsic evidence. Because the conditional language of the Script coupled with its attachment to the Second Amendment created an ambiguity, the trial court was allowed to resort to parol evidence to determine Mrs. Kirk's intent. We further hold that because all of the Trust documents were in writing, the magistrate's reliance on parol evidence did not violate I.C. § 9-503, the Statute of Frauds. We also hold that Mrs. Kirk's prior revoked wills were properly admitted to show her intent in making charitable gifts.
Third, we hold that the amendatory procedure of the original Trust was amended by the Second Amendment. We further hold that the Script was a valid portion of the Trust as it followed the new procedures as set forth in the Second Amendment. We also hold that the doctrine of incorporation by reference is inapplicable to the Script in this case and that the Script is not conditional in its terms.
Fourth, we hold that the language of the possession list does not offend the rule against suspension of the power of alienation pursuant to I.C. § 55-111 because this rule does not apply to charitable trusts.
Finally, we hold that the phrase "other property" found in the residuary clause of the Script includes both real and personal property, otherwise the bulk of Mrs. Kirk's estate would pass to Salfeety, an outcome she clearly did not intend.
Accordingly, the decision and order of the magistrate are affirmed.
Costs to respondent. No attorney's fees on appeal.
McDEVITT, C.J., and TROUT, J., concur.
YOUNG, Justice Pro Tem., concurs in the result.
JOHNSON, Justice, concurring and concurring in the result.
I concur in all of the Court's opinion, except part IV(D), concerning I.C. § 55-111, the statutory rule against suspension of the power of alienation. I concur in the result reached in this part. I do not agree with the reliance on cases from other jurisdictions to support the result. These cases are all based on the rule against perpetuities as it exists in these other jurisdictions. The rule against perpetuities is specifically abrogated by I.C. § 55-111. There are adequate reasons for not applying our statute to charitable trusts without invoking authorities from other jurisdictions that follow the rule against perpetuities.
NOTES
[1] This statute was repealed by the legislature effective July 1, 1994.