993 P.2d 1197

CARL H. CHRISTENSEN FAMILY TRUST, by Lenna B. Christensen, Trustee, and Lyle Christensen, Vance Christensen, Raeone C. Steuart, and Danita C. Wilcox, third-party beneficiaries, Plaintiffs–Appellants,

v.

Forrest CHRISTENSEN and Larae Christensen, husband and wife, Byron Kelley and Luann H. Kelley, husband and wife, Defendants–Respondents.

No. 24948.

Supreme Court of Idaho, Pocatello, August 1999 Term.

Dec. 10, 1999.

Lyon & Lyon, Pocatello, for appellants. Kenneth E. Lyon, Jr. argued.

Kent A. Higgins, Fort Hall, for respondents Forrest & Larae Christensen.

Jay R. McKenzie, Preston, for respondents Byron & Luann Kelley.

KIDWELL, Justice.

The plaintiffs appeal from the district court's grant of summary judgment for the defendants in an action to rescind a sale of real estate. The plaintiffs (a trustee acting for a family trust and four of her children) contend that the sale was illegal. They assert that one co-trustee lacked the capacity to consent to the sale and that the other co-trustee could not act alone to bind the trust. The plaintiffs also contend that the buyers misrepresented that the real estate would stay within the family, thus inducing the seller to part with the real estate for a reduced price. We affirm in part, vacate in part, and remand.

## I.

### FACTS AND PROCEDURAL BACKGROUND

In May 1993, Carl H. and Lenna B. Christensen placed most of their community property into the Carl H. Christensen Family Trust (Family Trust). The trust corpus included a substantial amount of real property as well as Carl and Lenna's bank accounts, farm equipment, livestock, and personal effects.

The Family Trust was a revocable living trust. As drafted by attorney Steve Fuller, it specified that Carl and Lenna were "Trustee" of the Family Trust. When referring to Carl and Lenna in any other capacity, the trust referred to them as "Grantors." Two of their children, Carl Vance Christensen (Vance) and Danita C. Wilcox, were designated as "Successor Trustees" for "[w]hen both Grantors resign or cease to act as Trustee." During the life of the Grantors, the Trustee was to pay the income of the trust estate to Carl and Lenna. After the death of either Grantor, the Family Trust would become irrevocable and the Trustee was to manage the trust to benefit the surviving spouse. After the deaths of both Carl and Lenna, the Family Trust would terminate. Its remaining assets would be distributed, with the first $100,000 going to a Missionary Trust for Carl and Lenna's descendants. Any residue would be divided among Carl and Lenna's seven children: Danita, Vance, Lyle B. Christensen, Raeone C. Steuart, Vachele C. Higbee, Forrest B. Christensen, and La Moyne C. Jeppson.

After the Family Trust was created, Carl and Lenna (as Trustee) sold several pieces of trust property to sons Forrest and Vance. Lenna testified that she preferred selling land to the children rather than to strangers even though "you sell cheaper to your kids." In each instance, the purchasing son initiated the transaction and set the price for the parcel.

Sometime in 1995, Forrest approached Lenna [1] about buying the 900+ acre family farm, which included Carl and Lenna's residence. In a family gathering, Carl and Lenna's children had previously discussed buying the farm in whole or in part. Vance stated that the children had tentatively agreed on a "family value" of $250,000. However, Forrest was the first child to actually discuss a price for the farm with Lenna. None of the other children knew that Forrest was trying to buy the farm.

Forrest set his own price, valuing the farm at $120,000 and the house (in which Carl and Lenna would retain a life estate) at $80,000. Lenna knew this valuation was low, because she had previously received offers of $400,000 and $250,000, both with a reserved life estate. Lenna could not remember telling Forrest about these offers, but she testified that she was sure he knew about them.

Byron Kelley was the Christensens' family dentist. For years, Byron had tried to convince Carl and Lenna to sell him a small parcel of the farm property for a cabin site. According to Lenna, Forrest told her that Byron was going to help him finance the purchase of the farm. Several weeks before the closing, Lenna talked with Byron after a dental appointment. At this time, she expressed her understanding that Byron would

---

1. It appears that Carl was already impaired by Alzheimer's disease at this time.

merely assist Forrest by financing the purchase, that Forrest would get the entire farm, and that Byron's payment for his help would be the acreage that he wanted for a cabin site.

By April 1996, Carl was gravely afflicted with Alzheimer's disease. However, family members did not initiate any judicial proceeding to have him declared incompetent. The Family Trust provided a non-judicial mechanism for determining that the Grantors were incapacitated for purposes of the trust, but this procedure was not followed to have Carl determined incapacitated.

Closing on the family farm was held on April 19, 1996. Carl and Lenna, Forrest and his wife (collectively, Forrest), Byron and his wife (collectively, Byron), and attorney Fuller were present. Fuller, in consultation with Forrest and Byron, had drawn up the contract of sale, a real estate mortgage, and two deeds. One deed transferred the bulk of the farm from Lenna and Carl as "Trustees" to Forrest and Byron, who each received an undivided one-half interest in the property. The other deed conveyed a five-acre parcel with the residence to Forrest, reserving a life estate for Carl and Lenna. The contract provided for attorney fees in the event that either party was required to employ an attorney to enforce the agreement.

Lenna testified that she did not realize that Fuller was supposedly representing her until the closing, because Fuller never asked Lenna her opinion about the sale or told her about the terms until the closing. She testified that she didn't realize until the closing that Byron was receiving a 50% interest in the farm or that farm equipment was included in the sale. Because she learned this only at the closing, she testified, she did not have an opportunity to adjust the sale price. Despite her reservations, Lenna signed the closing documents, as did Carl. Lenna testified that she thought that Carl did not understand everything that was going on at the closing, but she never expressed this to anyone at the time.

Several days after the closing, when the Christensens received the down payment check, Lenna told Fuller that she was unhappy with the deal. However, she accepted the check and placed it in a savings account. Lenna also testified that she learned from Forrest only after the closing that she was responsible for insurance, maintenance, and taxes on the life estate. The other children learned of the sale to Forrest and Byron only after the closing.

In November 1996, Lenna, as trustee of the Family Trust, filed a complaint against Forrest and Byron. Five of the children (co-plaintiffs) were co-plaintiffs as "third party beneficiaries" of the Family Trust.[2] Alleging that Carl was incapable of rationally giving an intelligent assent to the transaction, the plaintiffs sought to rescind the contract.

The district court initially entered a default judgment for the plaintiffs. It set aside the judgment, however, after the defendants answered and set September 22, 1997 as the date for a bench trial.

On July 11, 1997, Forrest moved to dismiss the co-plaintiffs. In August, Forrest moved for summary judgment. On September 12, the plaintiffs filed motions to appoint Vance as guardian for Carl and to amend their pleadings.

On September 15, 1997, Byron's attorney drafted a stipulation and proposed order. The stipulation canceled the September 22 trial setting, extended the time for filing motions until October 3, and scheduled the motion hearing for October 10. Evidently the stipulation was not filed with the district court. However, the September trial setting was canceled and the district court held hearings on the summary judgment motions on October 10.

On September 24, 1997, Forrest filed an amended motion for summary judgment. On October 1, the plaintiffs filed an amended complaint, which alleged fraud and added Carl as a party. On the same date, the plaintiffs moved to appoint Vance as guard-

---

**2.** Upon the plaintiffs' motion, the district court removed La Moyne as a plaintiff in January 1997.

ian ad litem of Carl for purposes of the lawsuit.

After a hearing on October 10, 1997, the district court issued judgment on March 10, 1998. It denied the plaintiffs' motion to amend their complaint and granted Forrest's motion to dismiss the co-plaintiffs. Without deciding whether Carl was competent as trustee to bind the trust, the district court concluded that Lenna could perform the duties of a trustee by herself, and that therefore the contract and deeds were valid. On this basis, the district court granted summary judgment for the defendants. After the district court denied the plaintiffs' motion to alter or amend summary judgment, the plaintiffs filed a timely notice of appeal.

## II.

## STANDARD OF REVIEW

When this Court reviews a district court's grant of summary judgment, it uses the same standard properly employed by the district court originally ruling on the motion. *McKay v. Owens*, 130 Idaho 148, 152, 937 P.2d 1222, 1226 (1997). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). The record is construed in the light most favorable to the non-moving party, and all reasonable inferences are drawn in favor of that party. *Brooks v. Logan*, 130 Idaho 574, 576, 944 P.2d 709, 711 (1997). If reasonable minds might come to different conclusions, summary judgment is inappropriate. *Id.* On appeal, this Court exercises free review. *Id.*

## III.

## ANALYSIS

**A. The Co-Plaintiffs Are Not Real Parties in Interest.**

■ The district court dismissed the co-plaintiffs because it concluded that they were not real parties in interest under the meaning of I.R.C.P. 17(a). The co-plaintiffs assert that they are beneficiaries of the Family Trust and thus entitled to pursue this action.

■ Idaho Rule of Civil Procedure 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest." I.R.C.P. 17(a). A real party in interest "is the person who will be entitled to the benefits of the action if successful, one who is actually and substantially interested in the subject matter." *State, Dep't of Law Enforcement v. One 1990 Geo Metro*, 126 Idaho 675, 680, 889 P.2d 109, 114 (Ct.App.1995) (quoting *Carrington v. Crandall*, 63 Idaho 651, 658, 124 P.2d 914, 917 (1942) (decision under statutory precursor to I.R.C.P. 17(a))).

The contingent interest of the co-plaintiffs does not make them "actually and substantially interested in the subject matter." *One 1990 Geo Metro*, 126 Idaho at 680, 889 P.2d at 114. The co-plaintiffs, as children of Carl and Lenna, will have an interest in the assets of the Family Trust only if (1) Carl and Lenna do not exhaust the trust corpus during their lifetimes, and (2) funds remain after $100,000 is distributed to the Missionary Trust. Because the co-plaintiffs have a mere expectancy, they will not be entitled to the benefits of a successful suit. *Cf. Federal Land Bank of Spokane v. Parsons*, 116 Idaho 545, 547–48, 777 P.2d 1218, 1220–21 (Ct.App. 1989) (explaining that son's expectation of owning family property did not make him a "party aggrieved" under I.A.R. 4). Thus, the co-plaintiffs do not come under the definition of real parties in interest.

The situation is analogous to that in *Baker v. Pendry*, 98 Idaho 745, 572 P.2d 179 (1977). In that case, a man in the midst of a divorce property settlement quitclaimed to his children an interest in "that portion of the below described property left to me by the court of law settlement of the pending suit." *Id.* at 746, 572 P.2d at 180. The Court held that, since the deed did not convey a present interest to the children, the man was the real party in interest. *Id.* at 747, 572 P.2d at 181.

The co-plaintiffs' contingent interest in the trust corpus was not sufficient to make them real parties in interest in an action involving the Family Trust. Therefore, we affirm the

district court's dismissal of the co-plaintiffs from this action.

## B. The District Court Abused Its Discretion in Denying the Plaintiffs' Motion to Amend.

The plaintiffs filed an amended complaint that differed in two major ways from the original complaint. It added three persons as parties: Carl as Trustee (through guardian ad litem Vance), Lenna as an individual, and Carl as an individual (through guardian ad litem Vance). The amended complaint also specifically alleged fraud. The district court denied the plaintiffs' motion to amend because it was untimely. Alternatively, it held that the evidence before the court was insufficient to support the proposed claim of fraud. The plaintiffs assert that the district court abused its discretion by denying their motion to amend.

■ After a responsive pleading is served, "a party may amend a pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires...." I.R.C.P. 15(a). The twin purposes behind the rule are to allow claims to be determined on the merits rather than on technicalities, and to make pleadings serve the limited role of providing notice of the nature of the claim and the facts at issue. *Clark v. Olsen,* 110 Idaho 323, 326, 715 P.2d 993, 996 (1986).

■ It is within the district court's sound discretion to decide whether to allow a party to amend its complaint after a responsive pleading has been served. *Hines v. Hines,* 129 Idaho 847, 853, 934 P.2d 20, 26 (1997). "[I]n the interest of justice, district courts should favor liberal grants of leave to amend a complaint." *Id.; see also Wickstrom v. North Idaho College,* 111 Idaho 450, 453, 725 P.2d 155, 158 (1986). A court does not abuse its discretion if it correctly perceives an issue as one of discretion, acts within the boundaries of its discretion consistent with applicable legal standards, and reaches its decision by an exercise of reason. *See State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

### 1. Timeliness.

■ The district court refused to grant the motion to amend on timeliness grounds, stating, "[T]he amended complaint was not lodged with this Court until October of 1997, nearly one year after the filing of the original complaint. It was not timely filed, and it will not be accepted or considered by this Court."

In *Smith v. Great Basin Grain Co.,* 98 Idaho 266, 561 P.2d 1299 (1977), the plaintiffs amended their complaints after the defendants moved for summary judgment. *Id.* at 272, 561 P.2d at 1305. Although the amended complaints reflected a new legal theory of recovery, this Court noted that there was no prejudice to the defendants "since the basic facts giving rise to a right of recovery remain unaltered." *Id.* This Court adopted the reasoning of the U.S. Supreme Court in interpreting the comparable federal rule:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given.

*Id.* (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962)) (internal quotations omitted).

■ The time between filing the original complaint and the amended complaint is not decisive. *See Clark v. Olsen,* 110 Idaho at 324–26, 715 P.2d at 994–96 (where seven years separated original and amended complaints and defendants had moved for summary judgment, denial of motion to amend without justifying reason was abuse of discretion). Rather, timeliness is important in view of the *Foman* factors such as undue delay, bad faith, and prejudice to the opponent. *See, e.g., Jones v. Watson,* 98 Idaho 606, 607, 610, 570 P.2d 284, 285, 288 (1977) (holding that trial court did not abuse its discretion in partially refusing leave to amend answer where amendment stated an entirely new counterclaim and was made on the day of trial); *Hinkle v. Winey,* 126 Idaho 993, 997, 895 P.2d 594, 598 (Ct.App.1995) (holding that there was no abuse of discre-

tion in denying motion to amend where amended complaint introduced new issues, added new parties, would delay trial, and could be resolved in a separate action).

Here the plaintiffs moved to amend their complaint on September 12, 1997, almost ten months after filing the original complaint. By a September 15 stipulation, all parties agreed to allow motions through October 3, a week before the stipulated hearing date of October 10. The stipulation and proposed order, although not part of the official record, were at least informally accepted by the district court, which canceled the original trial setting and held a motion hearing on October 10. The plaintiffs filed their amended complaint on October 1. Nothing in the record indicates that considering the allegations in the amended complaint would have delayed the October 10 hearing. The added legal theory of fraud caused no prejudice to the defendants: after several months of discovery, the basic facts giving rise to their claims were already known. The district court did not consider whether the amendment would cause delay or would prejudice the defendants. Therefore, the exercise of its discretion was not consistent with the legal standards applicable to timeliness of a proposed amendment.

Because the district court did not apply the correct legal standard for timeliness, it abused its discretion in denying the plaintiffs' motion to amend.

### 2. Statement of a Valid Claim.

▉▉ As an alternative basis for denial, the district court concluded that the facts before it did not support the amended complaint's allegation of fraud. A court may properly consider whether a proposed amendment states a valid claim. *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank,* 119 Idaho 171, 175, 804 P.2d 900, 904 (1991).

▉▉ A prima facie case for fraud requires the claimant to prove nine elements: "(1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's

ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury." *Hines v. Hines,* 129 Idaho at 851, 934 P.2d at 24.

In the amended complaint, the plaintiffs alleged the following:

- Forrest represented to Lenna that he was buying the property and Byron was financing the purchase;
- This representation was false;
- This representation, upon which Lenna relied, was made with an intent to deceive her into entering into a reduced-price transaction which she otherwise would not have made;
- Lenna relied upon Forrest's statement in going through with the sale;
- The act was done with an intent to reduce the inheritance of the other children;
- Because Lenna relied on Forrest's misrepresentation, she, Carl, and the co-plaintiffs have been harmed.

These allegations were sufficient to state a claim for fraud.

▉▉ The district court stated that the facts before it did not support a claim for fraud because Lenna knew before the closing that Byron was a part purchaser. A motion to amend may not be denied on this basis. As long as the proposed amendment states a valid claim, a court may not consider the sufficiency of the evidence supporting the proposed claim. *Duffin v. Idaho Crop Improvement Ass'n,* 126 Idaho 1002, 1013, 895 P.2d 1195, 1206 (1995). Sufficiency of evidence is more properly determined at the summary judgment stage. *Id.*

Because the district court improperly considered the sufficiency of the evidence, it abused its discretion in denying the plaintiffs' motion to amend.

### C. The District Court Erred in Deciding the Meaning of the Trust Document.

▉▉ The district court determined that, even if Carl were incompetent to act as trustee at the time of sale, Lenna had power to alienate trust property acting as sole trustee

of the Family Trust. The district court concluded that the trust document, which failed to provide for the management of the Family Trust if one of the original trustees should be unable to act as trustee before death, contained a latent ambiguity. It then interpreted the instrument, applying parol evidence and I.C. § 68–109(b) (which provides a default rule for situations where a co-trustee cannot perform). In light of the statute, the district court concluded that Lenna could act singly to bind the Family Trust. The plaintiffs assert that, contrary to the district court's conclusion, the trust document unambiguously provides that Lenna may not alienate trust property during Carl's incompetency.

 Unless contrary to settled principles of law, the intentions of a trust's settlors must control in actions involving the trust. *See Salfeety v. Seideman (In re Estate of Kirk)*, 127 Idaho 817, 827, 907 P.2d 794, 804 (1995). When this Court attempts to determine a settlor's intent, it construes a trust instrument as a whole, considering all parts in light of the entire instrument. *Id.* The Court's primary objective is to discover the intent of the parties through viewing the document in its entirety. *See Bondy v. Levy*, 121 Idaho 993, 996, 829 P.2d 1342, 1345 (1992). When a document is clear and unambiguous, interpretation of its meaning is a question of law. *See id.* at 996, 829 P.2d at 1345; *see also Allen v. Dennie (In re Inter Vivos Trust by Turner)*, 116 Idaho 913, 916, 782 P.2d 36, 39 (Ct.App.1989). In determining whether a document is ambiguous, the Court seeks to determine whether it is "reasonably subject to conflicting interpretation." *Bondy v. Levy*, 121 Idaho at 997, 829 P.2d at 1346. While a patent ambiguity is apparent on the face of the trust, a latent ambiguity is not evident until there is an attempt to apply the trust's provisions to the existing facts. *Salfeety v. Seideman*, 127 Idaho at 824, 907 P.2d at 801.

It is evident from the face of the Family Trust instrument that the settlors intended that Carl and Lenna act together as one trustee. The instrument consistently uses the singular term "Trustee" to refer to Carl and Lenna acting together. It is also appar-

ent that the instrument contemplates the surviving spouse acting as sole trustee.

The instrument is less clear, however, when discussing the incapacity of either Carl or Lenna. Article II, § 2(A) provides a non-judicial mechanism whereby either Carl or Lenna may be considered incapacitated for purposes of the trust. Article II, § 2(B) provides guidance for the management of the Family Trust during the incapacity of Carl, Lenna, or both. It states:

> During the period of incapacity, (1) any attempt by Grantors to exercise any of the powers reserved by him, her, or them under this agreement shall be without force and effect; ... (3) the Successor Trustees shall have power and authority on Grantors' behalf to exercise or perform any act ... whatsoever that Grantors may have ...; (4) if at the time of such determination Grantors are acting as a Trustee hereunder, he, she, or they shall be deemed to have resigned ... and any provision herein designating a successor trustee shall take effect.

Despite the language above, the article which deals with designating successor trustees provides for them to serve only "[w]hen *both* Grantors resign or cease to act as Trustee" (emphasis added). No provision allows a competent spouse to act alone as Trustee while the other spouse is incapacitated. Moreover, it is unclear if a trustee could be considered incapacitated without going through the procedures provided in Article II, § 2(A).

We agree with the district court that the trust instrument is reasonably susceptible to conflicting interpretations and thus contains a latent ambiguity.

 The district court erred, however, in proceeding to determine whether the trust instrument allowed Lenna to act singly to bind the trust. Once a court determines that a document is ambiguous, "interpretation of the document presents a question of fact which focuses upon the intent of the parties." *Bondy v. Levy*, 121 Idaho at 997, 829 P.2d at 1346. *See also Allen v. Dennie*, 116 Idaho at 916, 782 P.2d at 39. This issue of the settlors' intent, as a question of fact, could not

874

be resolved on summary judgment. *See* I.R.C.P. 56(c); *Bondy v. Levy*, 121 Idaho at 997, 829 P.2d at 1346.

Because interpretation of the trust instrument was a question of fact, the district court erred in granting summary judgment to Forrest and Byron.

### D. None of the Parties Is Entitled to Attorney Fees on Appeal.

The appellants and respondents request attorney fees on appeal pursuant to I.C. § 12–120 and a provision in the sale contract. However, none of the parties has presented argument on this issue.

Where a party requesting attorney fees on appeal cites the applicable statutes but does not present argument "with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes, and parts of the transcript and record relied on," we will not address the request. *Weaver v. Searle Bros.*, 131 Idaho 610, 616, 962 P.2d 381, 387 (1998) (quoting I.A.R. 35(a)(6)). Because none of the parties presented the necessary argument, we decline to award attorney fees on appeal.

### IV.

### CONCLUSION

The district court properly dismissed the co-plaintiffs because they were not real parties in interest. The court abused its discretion in denying the plaintiffs' motion to amend because it incorrectly applied the law regarding timeliness of amendments. The district court also erred by interpreting the meaning of an ambiguous document on summary judgment. We affirm the dismissal of the co-plaintiffs, vacate the denial of the motion to amend, vacate the judgment, and remand for proceedings consistent with this opinion.

Because of the mixed results, we award no costs. No attorney fees are awarded.

Chief Justice TROUT, Justices SILAK, SCHROEDER, and WALTERS, concur.