**MICRON TECHNOLOGY, INC., Plaintiff,**

v.

**RAMBUS INC., Defendant.**

**No. CIV.A.00–792–RRM.**

United States District Court, D. Delaware.

Feb. 27, 2002.

Frederick L. Cottrell, III, Esquire and Jeffrey L. Moyer, Esquire, Richards, Layton & Finger, Wilmington, Delaware; Fred H. Bartlit, Jr., Esquire, Bartlit Beck Herman Palenchar & Scott, Denver, Colorado; Matthew D. Powers, Esquire, Jared Bobrow, Esquire, Weil, Gotshal & Manges LLP, Redwood Shores, California; Bruce R. Genderson, Esquire, Williams & Connolly LLP, Washington, D.C.; Richard L. Rosen, Esquire, Arnold & Porter, Washington, D.C.; counsel for plaintiff.

Mary B. Graham, Esquire and Rodger D. Smith, Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware; John Allcock, Esquire, James W. Cannon, Esquire, David Pendarvis, Esquire, Sean C. Cunningham, Esquire, Edward H. Sikorski, Esquire, and John M. Guarangna, Esquire, Gray Cary Ware & Freidenrich, LLP, San Diego, California; Gregory P. Stone, Esquire and Andrea J. Weiss, Esquire, Munger Tolles & Olson, Los Angeles, California; counsel for defendant.

## MEMORANDUM OPINION

MCKELVIE, District Judge.

This is a patent and fraud case. Plaintiff Micron Technology, Inc. is a Delaware corporation with its principal place of business in Boise, Idaho. Micron is a manufacturer of semiconductor memory products, including dynamic random access memory ("DRAM") computer chips. Micron manufactures the two most common types of DRAM, synchronous dynamic random access memory ("SDRAM"), and the later developed double data rate SDRAM ("DDR SDRAM").

Defendant Rambus Inc. is a Delaware corporation with its principal place of business in Mountain View, California. Rambus is a technology company that designs computer memory systems and then licenses them to manufacturers such as Micron. Rambus is the assignee of U.S. Patent Nos. 5,915,105 (the '105 Patent), 5,953,263 (the '263 Patent), 5,954,804 (the '804 Patent), 5,995,443 (the '443 Patent), 6,032,214 (the '214 Patent), 6,032,215 (the '215 Patent), 6,034,918 (the '918 Patent), 6,038,195 (the '195 Patent) (collectively, the "Rambus Patents"). The Rambus patents all derive from one application, U.S. Patent App. No. 07/510,898, filed April 18, 1990. Rambus is also the owner and licensor of a proprietary type of SDRAM chip, known as Rambus dynamic random access memory ("RDRAM") chips.

On August 28, 2000, Micron filed its complaint in this action, alleging that Rambus committed fraud by failing to disclose its patents and patent applications to the Joint Electron Devices Engineering Council ("JEDEC"), a semiconductor industry association of which both Micron and Ram-

bus, for a time, were members. JEDEC develops industry-wide technical standards for DRAM and other products and, according to Micron, requires its members to disclose their patents and patent applications to the organization to prevent unknowing standardization of a patented technology. Micron asserts that Rambus defrauded Micron and other JEDEC members by failing to disclose its pending patent applications concerning features being considered by JEDEC for incorporation into SDRAM and DDR SDRAM industry standards. Micron asserts that after JEDEC adopted its standards, Rambus then sought exorbitant royalties from manufacturers like itself that produced JEDEC-compliant chips and not Rambus's RDRAM. Micron's claims include monopolization and fraud. It also seeks a declaratory judgment that the Rambus patents are invalid, unenforceable, and not infringed.

Following the denial of Rambus's motions to dismiss on January 2, 2001, Rambus answered Micron's complaint and asserted counterclaims that Micron's SDRAM and DDR SDRAM products infringe the Rambus patents.

Micron's suit against Rambus in this court is not the only action relating to Rambus's DRAM patents and its involvement with JEDEC. On August 8, 2000, Rambus sued Infineon Technologies AG, another SDRAM manufacturer, in the United States District Court for the Eastern District of Virginia (the "Virginia court"). *See Rambus Inc. v. Infineon Technologies AG*, Civil Action No. 3:00cv524 (E.D.Va.) ("*Infineon*"). Rambus asserted Infineon's JEDEC-compliant SDRAM products infringed four of its patents, including the '263 patent, the '804 patent, the '918 patent, and the '214 patent, all of which are asserted by Rambus against Micron in this action. Infineon brought a fraud counterclaim similar to Micron's fraud claim in this case. Following the Virginia court's issuance of a claim construction opinion dated March 15, 2001, the parties began trial on April 23, 2001. At the conclusion of Rambus's case in chief, the Virginia court granted judgment as a matter of law of non-infringement to Infineon. On May 9, 2001, the jury returned a special verdict finding Rambus had committed actual fraud by not revealing its patent applications to JEDEC.

Following trial, the Virginia court overturned the jury's verdict of fraud as to DDR SDRAM features, but upheld the jury's verdict as to SDRAM features. *Rambus, Inc. v. Infineon Technologies AG*, 164 F.Supp.2d 743 (E.D.Va.2001). The SDRAM features include a 2–bank design, externally supplied reference voltage, phase lock loops (PLLs), programmable CAS latency, and programmable burst length. The court found that Rambus was a member of JEDEC while these features were considered for standardization and that the jury's verdict on fraud as to these SDRAM features was supported by the evidence. *Id.* at 765. In contrast, the Virginia court found that Rambus left JEDEC before it had an obligation to disclose patent applications on the two DDR SDRAM features, "dual edge clocking" and "on-chip PLL/DLL." Thus, the Virginia court concluded Rambus violated no duty to JEDEC and its members as to DDR SDRAM. *Id.* at 767.

Micron seeks to apply the judgment of the Virginia court and jury to issues in this action through the principles of collateral estoppel. On June 18, 2001, Micron filed a motion for summary judgment of non-infringement of the Rambus patents, arguing that collateral estoppel requires this court's adoption of the Virginia court's claim construction and non-infringement judgment. On September 5, 2001, Micron

also moved for summary judgment on its fraud and equitable estoppel claims, and its unclean hands defense,[1] similarly seeking to apply the collateral estoppel effect of the SDRAM fraud judgment in the Virginia court to this action. Micron suggests the court grant its summary judgment motions and proceed to trial on the remaining issues in the case, including its claim Rambus committed fraud on JEDEC as to the DDR SDRAM standards.

On August 24, 2001, Rambus filed a motion to stay this action pending appeal of the *Infineon* judgment to the United States Court of Appeals for the Federal Circuit. The Federal Circuit has scheduled expedited briefing of the appeal and the final brief is due March 15, 2002. Rambus argues a stay is necessary while it appeals the claim construction and fraud verdict in *Infineon* because many rulings in that case were incorrect. Rambus warns that proceeding to trial in this action before those rulings are corrected on appeal will only compound the Virginia court's error.

The court heard oral argument on Micron's summary judgment motions and Rambus's stay motion during a series of teleconferences and in court on August 1, 2001, September 27, 2001, October 30, 2001. This is the court's decision on those motions.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The court draws the following facts from the pleadings and the affidavits and documents submitted in support of, and in opposition to, the parties' motions.

### A. *Facts Alleged by Micron*

JEDEC is a semiconductor industry association that develops industry-wide standards for various technology products, including DRAM. Micron alleges in its complaint that members of JEDEC are bound by a disclosure policy that requires them to disclose any patents or patent applications that might relate to the standards JEDEC considers for standardization. The purpose of this policy is to prevent a member from obtaining patents on the industry standard. JEDEC began considering industry standards for SDRAM as early as 1991.

Rambus was formed in 1990. It filed the '898 patent application on April 18, 1990. The PTO determined that the '898 application contained 11 independent inventions and required Rambus to select one to pursue on that application and permitted it to file divisional applications for the remainder. Rambus eventually withdrew the '898 application, but has filed many continuation and divisional applications beginning in 1992 that use the specification of the '898 application and claim priority from it. Micron contends at least 28 U.S. and foreign patents that claim priority from the '898 application have been granted.

Rambus joined JEDEC in 1992, and its officers and employees attended and participated in JEDEC meetings. Micron alleges that Rambus failed to disclose to JEDEC its '898 application and the many related patent applications it has filed. According to Micron, Rambus filed numerous patent applications, claiming priority from its original '898 application, that purport to cover JEDEC's SDRAM and DDR SDRAM features. Micron contends that Rambus filed these applications through-

---

1. While unclean hands was not asserted as a claim per se, Micron has offered it as basis for its claims seeking a declaratory judgment of invalidity and unenforceability of the Rambus patents.

out its membership in JEDEC and that it continues to do so. Furthermore, Rambus allegedly informed JEDEC that its patents related to Rambus's proprietary RDRAM chip, and not the SDRAM or DDR SDRAM JEDEC standards.

Rambus withdrew from JEDEC in June 1996. In its withdrawal letter, Rambus listed some of its patents and patent applications, none of which concerned SDRAM or DDR SDRAM features. Micron alleges that despite its contentions to the contrary, Rambus continued to seek patents over SDRAM and DDR SDRAM features after leaving JEDEC and that it began asserting those patents against DRAM manufacturers in January 2000. According to Micron, Rambus offered to DRAM manufacturers a non-negotiable license covering the Rambus patents on exorbitant royalty terms. Micron asserts that Rambus pursued this plan in an attempt to monopolize the DRAM market by forcing DRAM manufacturers to produce either RDRAM or pay exorbitant royalties to produce JEDEC compliant SDRAM and DDR SDRAM.

Micron has stated that it believes Rambus's patent policy is motivated by the decreased use of RDRAM in computers and the increase in expected use of DDR SDRAM. In 2001, SDRAM comprised 77% of the DRAM market, while DDR SDRAM comprised only 12% and RDRAM comprised 6%. According to market projections cited by Micron, in 2005 DDR SDRAM will increase to comprise 69.8% of the DRAM market, SDRAM 30%, and RDRAM only 0.1%. Micron alleges that to compete in this market, Rambus has threatened patent infringement suits for SDRAM and DDR SDRAM manufacturers who refuse to license the Rambus patents

and that Rambus sued Infineon for just this reason.

### B. *Procedural History*

Micron filed this action on August 28, 2000. Based on the previously recited facts, Micron asserted claims of: (1) monopolization and attempted monopolization under 15 U.S.C. § 2; (2) deceptive sales practices in violation of 6 Del. C. § 2532 *et seq.;* (3) breach of the contract between JEDEC and Rambus; (4) fraud; (5) equitable estoppel; and (6) negligent misrepresentation. Micron also seeks declaratory judgments that the eight Rambus Patents are invalid, unenforceable, and not infringed by Micron. Micron amended its complaint on February 1, 2001, adding an additional monopolization claim.

On September 18, 2000, Rambus filed two responsive motions. With respect to the declaratory judgment claims on the patents, Rambus sought dismissal of the action for lack of subject matter jurisdiction. With respect to the remaining claims, Rambus argued that Micron had failed to state claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The court heard argument on the motions on December 21, 2000, and on January 2, 2001 denied both motions.

On February 15, 2001, Rambus filed its answer, denying Micron's claims and asserting various affirmative defenses. Rambus also filed counterclaims against Micron and third-party claims against Micron Electronics, Inc., a partially-owned subsidiary of Micron, asserting that the companies infringed the Rambus patents. According to Rambus, the following Micron and Micron Electronics products infringe the Rambus patents: (1) SDRAM, SGRAM,[2] DDR SDRAM, and SyncFlash

---

**2.** The parties have not yet explained to the court how SGRAM is similar or dissimilar to

SDRAM or DDR SDRAM.

memory chips, and (2) SDRAM, SGRAM, and DDR SDRAM memory modules. In addition, Rambus moved to amend its answer and claims on March 15, 2001, seeking to add U.S. Patent No. 6,101,152 (the '152 patent) to the patents-in-suit and to add Micron Semiconductor Products, Inc., another Micron subsidiary, as a third-party defendant on all infringement claims. The court has not yet addressed Rambus's motion to amend its answer and claims to add the '152 patent and Micron Semiconductor.

Micron Electronics answered Rambus's third-party claims and moved to sever the claims against it from those against Micron. The court granted that motion to sever on April 27, 2001. The court also denied Rambus's informal request to consolidate the claims against Micron and Micron Electronics for trial.

On June 18, 2001, Micron filed a motion for summary judgment of non-infringement. It also filed, on September 5, 2001, a motion for summary judgment on fraud, equitable estoppel and unclean hands. Both motions seek to use collateral estoppel to apply the judgments in the *Infineon* litigation to issues in this case. On August 24, 2001, Rambus filed its motion seeking a stay of this action pending appeal of the *Infineon* judgment to the Federal Circuit.

Rambus has also filed a series of summary judgment motions. Rambus seeks summary judgment on Micron's antitrust claims, breach of contract claims, Delaware's Deceptive Trade Practices Act claims, and claims for damages. Rambus also seeks summary judgment on Micron's fraud, equitable estoppel and negligent misrepresentation claims as to DDR SDRAM. The DDR SDRAM motion is premised on the same facts by which Rambus prevailed on this issue in *Infineon*, which will be discussed shortly.

A ten day trial is currently scheduled to begin April 1, 2002.

### C. *Rambus Inc. v. Infineon Technologies AG*

Because Micron's motions are based on applying collateral estoppel from the *Infineon* case, the court will briefly review the pertinent history of that action.

In the *Infineon* matter, Rambus asserted that Infineon infringed claims from four of the eight Rambus patents at issue in this case. The Virginia court, in its *Markman* opinion, construed the disputed claim terms of those patents, including the terms "bus," "read request," "write request," "transaction request," "first external clock signal," "second external clock signal" and "integrated circuit device." With the exception of "integrated circuit device," the court otherwise construed these terms consistently for all the patents because the parties agreed all the patents were related. *See Rambus, Inc. v. Infineon Technologies AG*, Civ. A. No. 3:00cv524 (E.D.Va. Mar. 15, 2001).

Following the presentation of Rambus's infringement case, the court granted to Infineon judgment as a matter of law of non-infringement on all four patents on April 30, 2001. On May 29, 2001, the court issued a memorandum opinion explaining its grant of summary judgment as to the '918 patent and the '263 patent. *See Rambus, Inc. v. Infineon Technologies AG*, Civ. A. No. 3:00cv524 (E.D. Va. May 29, 2001). That opinion addressed the terms "bus" and "read request," and found that, given the court's construction of those terms, Rambus had not produced evidence that Infineon's products infringed. *See id.* at 10, 13. For example, the Virginia court considered claim 18 of the '918 patent, which describes the operation of a synchronous memory device.

18. A method of operation of a synchronous memory device, where in the memory device includes a plurality of memory cells, the method of operation of the memory device comprises:

receiving an external clock signal;

receiving first block size information from a bus controller, wherein the first block size information defines a first amount of data to be output by the memory device onto a bus in response to a read request; and

receiving a first request from the bus controller; and

outputting the first amount of data corresponding to the first block size information, in response to the first read request, onto the bus synchronously with the respect to the external clock signal.

'918 patent, claim 18. The court construed the term "bus," as used in claim 18 and all the Rambus patents, to require a multiplexed bus carrying address, data and control information. Because the JEDEC-compliant Infineon products used a dedicated data line bus architecture, in which each line carries only one kind of information, the Virginia court ruled that Infineon was entitled to summary judgment of non-infringement of this claim. See Rambus, Inc. v. Infineon Technologies AG, Civ. A. No. 3:00cv524, at 5–10 (E.D.Va. May 29, 2001).

After the court's ruling from the bench on non-infringement, Infineon presented its fraud counterclaims to the jury. On May 9, 2001, the jury returned a special verdict finding Rambus had committed actual fraud related to JEDEC standards and awarded $1 in actual damages and $3.5 million in punitive damages. The jury's verdict was general and did not separately address fraud as to particular SDRAM or DDR SDRAM features. The Virginia court later reduced the amount of punitive damages to $350,000 pursuant to Va.Code § 8.01–38.1.

Following trial, the parties filed a number of post-trial motions. In an August 9, 2001 opinion, the Virginia court upheld the jury's verdict that Rambus committed fraud by failing to disclose patents and patent applications while JEDEC worked on SDRAM features. See Rambus, Inc. v. Infineon Technologies AG, 164 F.Supp.2d 743, 751 (E.D.Va.2001) (the "JMOL opinion"). The court, however, overturned the jury's verdict of fraud with respect to DDR SDRAM. The Virginia court found that the duty of JEDEC members to disclose patents and patent applications arose when JEDEC submitted a proposed standard for a vote. Id. at 765. Although JEDEC had presentations as early as 1992 on features such as "dual edge clocking" and "on-chip PLL/DLL," both later incorporated in the DDR SDRAM standard, the court found Rambus had no duty to disclose its patents and patent applications until there was a vote on the DDR SDRAM standard. Id. at 766. Because JEDEC did not begin working on a standard on DDR SDRAM until December 1996 and because Rambus left JEDEC six months earlier, Rambus had no duty to JEDEC as to DDR SDRAM that it could have violated. Id. at 767. Accordingly, the Virginia court granted Rambus judgment as a matter of law on Infineon's fraud claim as to DDR SDRAM.

On the same date it issued the JMOL opinion, the Virginia court also issued an opinion in which it found that Infineon was entitled to $7,123,989.52 in attorneys' fees pursuant to the "exceptional cases" provision of 35 U.S.C. § 285. It entered final judgment on August 21, 2001 and, after further consideration, entered a permanent injunction against Rambus, barring it from asserting the claims of its U.S. patents relating to four SDRAM features

against any Infineon SDRAM or DDR SDRAM products. Those four features are "(1) programmable CAS latency/access time/delay time; (2) programmable burst length/block size; (3) externally supplied reference voltage; or (4) two bank designs; as those technologies are described" in JEDEC standards. *Rambus Inc. v. Infineon Technologies AG*, Civ. A. No. 3:00cv524, at 3 (E.D.Va. Nov. 26, 2001).

On August 22, 2001, Rambus filed its notice of appeal to the Federal Circuit, claiming the Virginia court erroneously construed the claims and improperly instructed the jury. Infineon has cross-appealed the court's judgment as a matter of law on DDR SDRAM. The Federal Circuit has agreed to an expedited briefing schedule and the parties will complete briefing on March 15, 2002.

### D. *Other Related Litigation*

This suit and the *Infineon* litigation are not the only cases addressing the Rambus patents and Rambus's conduct in JEDEC. Hynix Semiconductor Inc., another DRAM manufacturer, sued Rambus in this court on claims similar to those Micron has asserted. That action was transferred to the Northern District of California. *See Hynix Semiconductor Inc v. Rambus Inc.*, No. C 00–20905 RMW (N.D.Cal.) (the "California court"). In the California court, Rambus has counterclaimed that Hynix infringes eleven of Rambus's patents, including the eight patents in this action and the four at issue in *Infineon.* All eleven patents descend from Rambus's '898 application and share the same specification.

In an order dated November 21, 2001, the California court granted Hynix's motion for summary judgment of non-infringement as to most of the claims and patents asserted by Rambus. *See Hynix Semiconductor Inc v. Rambus Inc.*, No. C

00–20905 RMW (N.D.Cal. Nov. 21, 2001) (Whyte, J.). The California court also announced that it was inclined to grant a stay of the action requested by Rambus. *Id.* The court granted that stay on December 17, 2001 and it remains in effect until further order. The California court conditioned the stay on Rambus's agreement not to "assert against Hynix any patents that may issue relating to JEDEC-compliant memory devices which stem from the original '898 application filed in 1990." The court also required that Rambus waive any damages during the pendency of the stay as to the '152 patent, which is not at issue in this litigation, and any "new patents that issue stemming from the original '898 application." Rambus agreed to those conditions.

In addition to this action, there are other suits between Micron and Rambus in Europe. Those suits involve various European patents owned by Rambus that claim priority from the '898 application filed in the United States. The two companies are litigating those patents in Germany, Italy, France, and the United Kingdom. There is also a suit between Micron and Rambus before the United States International Trade Commission.

## II. *DISCUSSION*

Micron seeks summary judgment of non-infringement of the Rambus patents and on its claims of fraud and equitable estoppel as to SDRAM based on Rambus's conduct while in JEDEC. It submits that the judgment of the Virginia court in *Infineon* on these issues can be applied here under the principles of collateral estoppel. Therefore, Micron seeks a trial on those claims not established by collateral estoppel, including its claim that Rambus committed fraud on JEDEC as to DDR SDRAM.

Rambus argues that, rather than address Micron's summary judgment motions and proceed with trial now, this court should stay this action until the Federal Circuit has reviewed the *Infineon* judgment. Rambus contends that a stay would permit the Federal Circuit to correct the alleged errors of the Virginia court, including its purportedly erroneous claim construction and failure to give the correct instruction to the jury on fraud.[3] Rambus argues that a stay would conserve the resources of the parties and court by avoiding the need to relitigate issues on which collateral estoppel is granted if the Virginia court is reversed. It also might limit the numerous difficulties of distinguishing for a jury those issues already established by collateral estoppel on Micron's fraud claims and those issues for the jury's decision.

During argument on the motions, the court suggested that the parties reach mutually agreeable terms for a stay. Micron offered to stay this action if Rambus would stay all litigation against Micron worldwide, including the actions in Germany, Italy, England, and France. To minimize the prejudice to Micron from staying this action, Rambus offered to stay all of the foreign actions except the proceeding in Germany. Unable to reach consensus, Micron continues to press for grant of its summary judgment motions and Rambus continues to press for grant of its stay motion. The issue for the court's decision is whether to apply collateral estoppel and proceed to trial on the remaining issues, or whether to await the Federal Circuit's decision in *Infineon* before proceeding.

### A. Micron's Proposed Approach

Micron seeks to apply the judgment in the Virginia court on both non-infringement and fraud in this action. "Collateral estoppel 'precludes a plaintiff from relitigating identical issues by merely 'switching adversaries' and precludes a plaintiff 'from asserting a claim that the plaintiff had previously litigated and lost against another defendant.'" *See A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 704 (Fed.Cir.1983) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). The elements of collateral estoppel, also known as issue preclusion, are well-established.

> [C]ollateral estoppel is appropriate only if: (1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) plaintiff had a full and fair opportunity to litigate the issue in the first action.

*A.B. Dick Co.*, 713 F.2d at 702.

In its motion for summary judgment of non-infringement, Micron argues that collateral estoppel requires this court to adopt the claim construction of the Virginia court. Micron submits that the Virginia court's claim construction in *Infineon* is binding in this action because each of the eight Rambus patents contain at least one claim limitation construed in *Infineon*, including "bus," "read request," "write request," "transaction request," and "external clock." If the court adopts the claim construction of the Virginia court, Micron

**3.** With respect to the jury's fraud verdict, Rambus contends that the Virginia court erred in failing to instruct the jury that "there is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a product the applicant's attorney has learned about during the prosecution of a patent application." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed.Cir.1988).

asserts that its products cannot infringe because the Virginia court found that Infineon's JEDEC-compliant products do not infringe and Micron's JEDEC-compliant products are identical to Infineon's.

In its motion for summary judgment on fraud, equitable estoppel, and unclean hands, Micron argues that the jury's verdict in *Infineon* should be applied in this action. According to Micron, the jury in *Infineon* found that Rambus failed to disclose its patents and patent applications to JEDEC and therefore it committed a fraud on all JEDEC members, including both Infineon and Micron. Of course, because the Virginia court granted Rambus judgment as a matter of law with respect to the fraud allegations on DDR SDRAM features, Micron's summary judgment motion is limited to SDRAM features and not DDR SDRAM.

Micron proposes that if its summary judgment motions are granted, the court can then conduct a "DDR only" trial. In such a trial, Micron would rely on the Virginia court verdict to establish fraud as to SDRAM features, but would seek to show, as Infineon unsuccessfully tried to do in Virginia, that Rambus also committed fraud on DDR SDRAM features. Micron has stated that it would waive a jury trial and its right to damages if it can more quickly proceed with a bench trial. Following a bench trial, Micron would seek an order enjoining Rambus from the worldwide prosecution of its patents, and any pending patent applications that may later be granted, relating to the SDRAM and DDR SDRAM JEDEC standards.

## B. *Rambus's Proposed Approach*

Rambus disagrees that Micron is entitled to summary judgment on either of Micron's motions. With respect to the non-infringement motion, Rambus contends that the Virginia court erred in claim construction and that this court should not duplicate that error by granting summary judgment of non-infringement based on collateral estoppel. Further, Rambus argues that because the Federal Circuit will be applying de novo review to the Virginia court's claim construction, there is a heightened probability the claim construction, and related non-infringement judgment, will be reversed on appeal. With respect to the fraud, equitable estoppel, and unclean hands motion, Rambus argues that the Virginia court judgment does not establish that Rambus committed a fraud on Micron because Micron's detrimental reliance was not an issue for decision in that action. Finally, Rambus submits that proceeding with a DDR only trial would be a mistake, both because it is premised on the court's granting of the two summary judgment motions and because it would involve presenting complex collateral estoppel issues to a jury. Rambus believes that, in any event, it is entitled to a jury trial on its infringement claims.

Rather than proceed with trial, Rambus proposes that this court enter a stay of all proceedings in this action pending the Federal Circuit's opinion in *Infineon*. According to Rambus, the Federal Circuit will be considering a number of issues likely to be dispositive of Micron's summary judgment motions. Not only will it be addressing the Virginia court's claim construction, it will also be considering when, if ever, Rambus had a duty to disclose patent applications and patents to JEDEC. Thus, proceeding to trial at this time raises the likelihood that this court's rulings, and the jury's verdict, could be inconsistent with the holdings of the Federal Circuit, therefore requiring later relitigation of the same facts. Moreover, because the Federal Circuit has ordered expedited briefing in the *Infineon* appeal, with the final briefs due March 15, 2001,

Rambus contends that the Federal Circuit is likely to act quickly on the appeal.

To minimize any prejudice that Micron might experience as a result of a stay, Rambus has offered to enter a "worldwide truce" with Micron, in which the parties would stay all of the actions between the parties throughout the world, with the exception of one proceeding in Germany. Rambus will also agree not to assert against Micron any other patents relating to JEDEC-compliant memory devices which stem from the '898 application. Rambus has not agreed, however, to waive any damages accrued during the stay.[4]

C. *Should The Court Grant Micron's Summary Judgment Motions And Conduct a DDR Only Trial, Or Should It Stay The Case Pending Appeal Of Infineon?*

Micron's proposed approach suffers from two difficulties. First, its motion for summary judgment of non-infringement relies on the premise that this court will adopt the Virginia court's claim construction, even though that claim construction is currently the subject of Rambus's appeal to the Federal Circuit. Second, its motion for summary judgment as to fraud, equitable estoppel, and unclean hands assumes that the Virginia jury's fraud verdict establishes fraud as to all members of JEDEC, and not simply Infineon.

In contrast, Rambus's stay motion is facially appealing because it would eliminate any possibility that the Federal Circuit might reverse the claim construction of the Virginia court shortly after this court grants summary judgment of non-

infringement based on applying that construction. Furthermore, the Federal Circuit will also be considering when, if ever, Rambus had a duty to disclose patents and patent applications to JEDEC. Thus, the *Infineon* appeal is likely to resolve several issues that may be dispositive in this action. Because briefing will be completed as soon as March 15, 2002 and argument can be expected to follow not long afterward, awaiting the Federal Circuit's opinion appears both prudent and efficient.

In response to Rambus's request for a stay, Micron has attempted to show why it must receive summary judgment of non-infringement now and cannot await the *Infineon* appeal. In its letters to the court, Micron has identified two respects in which it believes itself to be prejudiced by a delay. First, it argues that its SDRAM and DDR SDRAM products operate under a "cloud of uncertainty" while Rambus's infringement claims remain undecided, thereby affecting Micron's ability to invest in further development of those products. While it is certainly true that Rambus's charge of infringement creates some uncertainty for Micron's development of SDRAM and DDR SDRAM products, this uncertainty is no different from that faced by other makers of JEDEC-compliant products, such as Infineon and Hynix. For DRAM manufacturers, the *Infineon* verdict should serve to dissipate that uncertainty; and because Micron seeks simply to apply the *Infineon* verdict to its products, it is difficult to understand how summary judgment of non-infringement based on collateral estoppel could do

4. In a letter dated December 7, 2001, Rambus reported that it would agree to the same conditions entered in the California court, which included a waiver of damages as to claims 12 and 16 of the '152 patent and "any new patents that issue stemming from the original '898 application." Because the '152 pat-

ent is not yet a part of this litigation (although Rambus has moved to amend its claims to add it), Rambus pointed out in its letter that this condition is inapplicable here. Rambus's December 7, 2001 letter did not specifically address the accrual of damages on new patents.

more to diminish the uncertainty than has already been done.

Second, Micron argues that deferring an infringement verdict pending the *Infineon* appeal prejudices its interests because Rambus can continue to assert related foreign patents against Micron in foreign forums. The argument that Micron is prejudiced by the foreign suits presumes, however, that this court could remedy this situation by entering an injunction barring Rambus from prosecuting those actions. This court will not opine at this juncture whether it has the authority to enjoin Rambus from prosecuting foreign patents. For purposes of considering the prejudice to Micron from this delay, however, the court relies on Rambus's offer to stay all foreign litigation in all countries but Germany. In light of Rambus's offer, the court believes that the prejudice to Micron from the delay of its claims against Rambus is minimal. Moreover, Micron is free to seek a stay or other relief from the German court if it believes Rambus to be abusing that process.

In determining whether to proceed to trial at this time, the court must also consider the scope of the trial to be conducted if the court does not await Federal Circuit review of *Infineon*. Micron's proposed DDR only trial presumes that the court will grant its summary judgment motion on SDRAM fraud based on collateral estoppel. Application of collateral estoppel first requires analysis of whether the issues presented by Micron's fraud claims

are identical to those found by the jury in the *Infineon* litigation. In *Infineon*, the Virginia court's instruction to the jury on fraud was largely consistent with that which is required by Delaware law.[5] *See Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del.1992). It stated that to prove actual fraud, Infineon had to show that:

(1) Rambus made a misrepresentation of a material fact, or that Rambus failed to disclose a material fact when Rambus had a legal duty to make such a disclosure;

(2) The misrepresentation was made, or the failure to disclose was done, knowingly and intentionally;

(3) The misrepresentation was made, or the failure to disclose was done, with the intent to mislead Infineon;

(4) Infineon reasonably relied upon the misrepresentation or the nondisclosure; and

(5) Infineon sustained injury or damage as a result of such reliance.

Thus, because it found actual fraud, the jury can be presumed to have found each of these elements.

While the jury's finding conclusively establishes those elements of fraud relating to Rambus's conduct, such as Rambus's misrepresentation (or failure to disclose in the face of a duty to do so) and its knowing intent to mislead Infineon, it does not relate any findings with respect to Micron. On this basis, Ram-

**5.** Micron submits that Delaware law governs its state law causes of action. Rambus contends instead that the action is governed by Idaho law, but notes that Idaho and Delaware have similar formulations of fraud, particularly the requirement of justifiable reliance. *Compare Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del.1992) *with Carl H. Christensen Family Trust v. Christensen*, 133 Idaho 866, 993 P.2d 1197, 1203 (1999) ("A prima facie case for fraud requires the claimant to prove

nine elements: '(1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury.' ") (citation omitted). The court will therefore refrain from deciding, at this time, which law applies.

bus maintains that it is inappropriate to apply collateral estoppel to Micron's fraud claim. The court agrees. The jury's finding that Infineon reasonably relied to its detriment on Rambus's failure to disclose is not a finding that Micron, or all JEDEC members, similarly reasonably or justifiably relied. Thus, it cannot be said that the jury's finding in *Infineon* conclusively established an identical fact for Micron in this suit. The court will therefore deny Micron's motion for summary judgment on fraud, equitable estoppel, and unclean hands.

Because the court is denying this motion, the parties could not proceed to conduct a DDR only trial, as Micron suggests. At best, Micron could claim collateral estoppel as to certain elements of the fraud finding, including Rambus's misrepresentation and intent to deceive. Yet because Infineon has appealed the Virginia court's JMOL ruling on DDR SDRAM, the subject of Rambus's duty of disclosure to JEDEC will be considered by the Federal Circuit. Thus, proceeding to trial at this point and relying on the Virginia court judgment to even that limited extent presents the same possibility that the court will be wasting its resources.

█ Based on the foregoing discussion, the court concludes it would be prudent to await disposition of the *Infineon* appeal before proceeding to trial in this action. The court, however, concludes a complete stay of this action pending the appeal of *Infineon* is unwarranted because the parties have identified further discovery that needs to be taken. Particularly, Micron has moved to compel Rambus's production of documents and deposition testimony pursuant to the crime-fraud exception to the attorney-client privilege. There are also several depositions that remain to be taken and further discovery on Micron's antitrust claims. In this context, the court will decline to stay this matter so that the parties can complete discovery.

Even though it will deny Rambus's stay motion, the court will be delaying claim construction and trial until after the *Infineon* appeal. Because this was the same relief sought by Rambus in its stay motion, the court will condition this delay on the terms proffered by Rambus—a stay of all other litigation, foreign and domestic, between Micron and Rambus, except the suit in Germany, and an agreement by Rambus not to file additional suits relating to the Rambus patents. Should this delay cause some unexpected prejudice to Micron, it may petition the court for redress. The parties should inform the court of the Federal Circuit's decision in *Infineon* and the court will adopt a new schedule for trial at that time.

### III. *CONCLUSION*

The court will neither deny or grant Micron's motion for summary judgment of non-infringement at this time. The court concludes, however, that Micron is not entitled to summary judgment on its fraud and equitable estoppel claims and its unclean hands defense. The judgment in the Virginia court does not establish that Micron relied to its detriment on Rambus's misrepresentations or failures to disclose. Micron therefore cannot rely on collateral estoppel to establish the elements of fraud, equitable estoppel, and unclean hands.

Finally, while the court will not proceed to trial pending a decision in the *Infineon* appeal, nor will it stay the matter as a whole. The parties can use the interim to complete discovery.